**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF NEW MEXICO**

MARCUS HAHN,

     Petitioner,

v.                                        No. 21-cv-0880 KWR/DLM

UNITED STATES OF AMERICA,

     Respondent.

**PROPOSED FINDINGS AND RECOMMENDED DISPOSITION**
**RECOMMENDING DISMISSAL OF PETITIONER'S CLAIMS**

**THIS MATTER** is before the Court on Petitioner Marcus Hahn's Amended Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence or Judgment by a Person in Federal Custody (Amended Motion), filed September 19, 2022. (Doc. 15.) Respondent the United States filed its Response to Hahn's Motion on July 10, 2024. (Doc. 45.) United States District Judge Kea W. Riggs referred the case to the undersigned to make proposed findings and a recommended disposition. (Doc. 30.) After careful review and consideration of the filings, I find that Hahn's claims fail. Specifically, two of Hahn's claims are procedurally barred, and Hahn cannot demonstrate any exceptions to the procedural bar. Thus, I recommend dismissal of those two claims on the basis that they are procedurally barred. I further recommend that the Court dismiss Hahn's remaining three claims on their merits.

## I.  FACTUAL AND PROCEDURAL BACKGROUND

In 2000, a jury convicted Hahn of manufacturing 100 or more marijuana plants and of opening and maintaining a place for the purpose of manufacturing, distributing, and using

marijuana (Counts 1 and 2). (CR Docs. 133; 184.[1]) *See also United States v. Hahn*, 2002 WL 595140, 38 F. App'x 553, 554 (10th Cir. 2002). The jury also convicted Hahn of possessing a firearm in furtherance of the manufacture of marijuana in violation of 18 U.S.C. § 924(c) (Count 3) and of possessing a firearm in furtherance of the maintenance of a place to manufacture, distribute and use marijuana also in violation of 18 U.S.C. § 924(c) (Count 4). (CR Docs. 133; 184.) The Court, relying on the 1998 United States Sentencing Guidelines, imposed a sentence of 60 months for Count 1, 27 months for Count 2 (to run concurrently with the Count 1 sentence), 120 months for the first § 924(c) violation (Count 3), and 300 months for the second § 924(c) violation (Count 4). (CR Doc. 133.) The term for Count 3 was consecutive to Counts 1 and 2, and the term for Count 4 was consecutive to all other terms, for a total sentence of 40 years. (*Id*.) His total offense level was 18, and his criminal history category was I. (*Id.*)

## A. Direct Appeal

Hahn appealed his sentence for the second firearm offense (Count 4) in 2002. *See Hahn*, 38 F. App'x at 554. He argued that "the statute does not authorize treating his second firearm conviction as 'second or subsequent' to the first for purposes of the statute's sentencing enhancement, because the underlying drug crimes were part of a 'continuing incident' and were 'coterminous in space and time.'" *Id*. He did not raise any other claims. (CR Doc. 140.) The Tenth Circuit affirmed the conviction and sentence, *Hahn*, 38 F. App'x at 555, and the Supreme Court denied his petition for writ of certiorari on January 27, 2003. (CR Doc. 180.)

## B. Habeas Petitions

In 2004, Hahn moved to vacate, set aside, or correct his sentence under 28 U.S.C. § 2255. (CR Doc. 141.) *See also United States v. Hahn*, 191 F. App'x 758 (10th Cir. 2006). He argued that

---

[1] References to "CR Doc." are to the docket in *United States v. Hahn*, No. 00-cr-0082 KWR/SMV (D.N.M.), the underlying criminal case.

double jeopardy bars multiple § 924(c)(1) firearm convictions "based on multiple predicate offenses which are factually inseparable in terms of time, space and underlying conduct, and that § 924(c)(1) contains a number of ambiguities, requiring application of the rule of lenity." *Hahn*, 191 F. App'x at 760 (citation omitted). Hahn claimed that these arguments were not raised on direct appeal because he received ineffective assistance of counsel. *Id*. The district court dismissed the motion on the basis that the arguments were procedurally barred and lacked merit. *Id*.

Hahn moved to reconsider under Federal Rule of Civil Procedure 59(e). (CR Doc. 150.) He disputed that his double jeopardy claim had been resolved on direct appeal and moved to amend his § 2255 motion to add more evidence. *Id*. The district court treated these motions as successive § 2255 motions and transferred them to the Tenth Circuit. (CR Doc. 153.) The Tenth Circuit agreed that Hahn's double jeopardy claims were procedurally barred and that his ineffective assistance claims lacked merit. *Id.* at 760–61. The Tenth Circuit also agreed that Hahn's motions to amend "qualified as second or successive and were properly referred to [the Tenth Circuit]." *Id.* at 762. It thus affirmed the district court's decision. *Id.*

In 2016, Hahn filed a habeas petition under 28 U.S.C. § 2241 in the United States District Court for the District of South Carolina. *Hahn v. Moseley*, 931 F.3d 295, 300 (4th Cir. 2019). Hahn argued that due to changes in Tenth Circuit law with respect to 18 U.S.C. § 924(c), he was legally innocent of Count 4. *Id*. The District Court of South Carolina denied the petition, and Hahn appealed to the Fourth Circuit Court of Appeals. *Id*. at 297. The Fourth Circuit granted the petition and remanded with instructions to vacate Hahn's 300-month sentence on Count 4. *Id*. at 304.[2] The

---

[2] The Fourth Circuit's decision, in which it found that Hahn met the criteria for § 2241 collateral habeas relief, relied on a previous Fourth Circuit decision, *In re Jones*, 226 F.3d 328 (4th Cir. 2000). In 2022, the United States Supreme Court addressed the interplay between § 2241 and § 2255, and it determined that § 2255(e)'s saving clause did not permit a prisoner asserting an intervening change in law to circumvent AEDPA's restriction on second or successive § 2255 motions. *Jones v. Hendrix*, 599 U.S. 465, 471 (2022). Thus, the United States Supreme Court abrogated the Fourth Circuit's *In re Jones* decision, and Hahn would not qualify for relief if his case were before the Fourth Circuit today.

District Court of South Carolina then entered an order stating that the "remaining convictions, and

the sentences associated with them, remain in place, resulting in a sentence of 60 months on Count

1, a concurrent 27-month sentence on Count 2, and a consecutive 120-month sentence on Count

3, for a total custodial sentence of 180 months. All other aspects of the original sentence remain in

place." (CR Doc. 209.) *See also Hahn v. Moseley*, C/A No. 9:16-cv-3235 JFA-BM, Doc. 59

(D.S.C. Oct. 15, 2019). This Court then issued an amended judgment sentencing Hahn to 180

months. (CR Docs. 196; 209.) After Hahn requested clarification of its order, the District Court of

South Carolina entered another order stating:

> To clarify, this Court (1) grants [Hahn]'s Petition for habeas corpus, (2) vacates
> his conviction and sentence for Count IV, (3) allows the sentencing court in the
> District of New Mexico to issue an amended judgment in accordance with this
> Court's Order (ECF No. 59), and (4) this Court does not preclude the sentencing
> court in the District of New Mexico from exercising its discretion to resentence
> [Hahn] *de novo* under the "sentencing package" doctrine.

*Hahn v. Moseley*, C/A No. 9:16-3235-JFA-BM, Doc. 62 (D.S.C. Nov. 4, 2019).

Hahn then filed a motion entitled "Motion for Status Conference and Motion for

Reconsideration of this Court's Amended Judgment or, in the Alternative, Motion to Correct

Sentence Under Federal Rule of Criminal Procedure 35(a)" (the Motion for Reconsideration). (CR

Doc. 202.) Hahn asked the Court to "reconsider its amended judgment to account for" the District

Court of South Carolina's "clarified" order and the sentencing package doctrine, under which

courts may "resentence a defendant on convictions that remain after he succeeds in getting one or

more convictions vacated." (*Id.* at 1 (quoting *United States v. Hicks*, 146 F.3d 1198, 1202 (10th

Cir. 1998)).) The Court characterized the Motion for Reconsideration as a substantive challenge

to the amended judgment and construed it "as a § 2255 habeas petition, not a true Rule 60(b)

motion." (CR Doc. 209 at 8.) It then granted Hahn's request for a resentencing hearing under the

sentencing package doctrine, holding that "[t]he sentence in 00-82, in its entirety, was one

aggregate sentence and one 'unified term of imprisonment'" because Count 4 "is interdependent of its underlying felony, Count 2" and the "sentences in Counts 1–3 also ran consecutively to the sentence in Count 4." (*Id*. at 11–12 (quoting *United States v. Easterling*, 157 F.3d 1220, 1224 (10th Cir. 1998)).) The Court found that, by vacating Court 4, "the District Court of South Carolina 'unbundled' the aggregate sentence in 00-82," which "potentially undermin[ed] the Court's original sentencing intent for the overall sentence." (CR Doc. 209 at 11–12.) It held that, therefore, "[u]nder the sentencing package doctrine, resentencing on the remaining counts of 00-82 is proper." (*Id*. at 12.)

In addition to the Motion for Reconsideration, Hahn filed a Motion for Reduction of his Count 3 Sentence under 28 U.S.C. § 3582(c)(1)(A)(i) from 10 years to 5 years in keeping with a change in the mandatory minimum sentence for such crimes. (CR Doc. 220 at 1.) He argued that, even if the Court did not reduce his sentence for that reason, the Court should reduce the sentence for Count 3 because there were "extraordinary and compelling reasons" to do so. (*Id*. (quoting § 3582(c)(1)(A)(i)).)

On September 25, 2020, the Court, after a hearing at which Hahn was present, amended Hahn's sentence (the Second Amended Judgment). (CR Doc. 251.) Specifically, the Court found, based on the 2018 Guidelines, a base offense level of 18 and criminal history category of IV resulted in a Guidelines range of 41 to 51 months for Count 2, and accordingly increased the sentence for Count 2 from 27 to 41 months, to run concurrently with the mandatory minimum 60-month sentence for Count 1. Citing "extraordinary and compelling reasons," the Sentencing Court reduced the sentence for Count 3 to 60 months, to run consecutively to the other sentences. (*Id*. at 3.) In sum, the Court reduced Hahn's sentence from 180 months to 120 months.[3] (*Id*. at 4.)

---

[3] Overall, Hahn's original sentence was reduced from 480 months to 120 months.

Hahn filed his "Second Motion to Vacate under 28 U.S.C. 2255" on September 8, 2021, (Doc. 1) and the Amended Motion on September 19, 2022. (Doc. 15.) Noting that the Court "lacks jurisdiction over second/successive § 2255 claims absent authorization from the Tenth Circuit," the Court ordered Respondent to file a limited answer addressing which claims, if any, are "second or successive" under 28 U.S.C. § 2255(h). (Doc. 16.) It also ordered Respondent to address "the extent to which Petitioner can challenge the Amended Judgment entered September 25, 2020; . . . [and] which claims, if any, are potentially cognizable (i.e. not barred as second or successive) . . . ." (*Id*. at 1–2.) Respondent timely filed a Limited Answer in which it relied on *Prendergast v. Clements*, 699 F.3d 1182 (10th Cir. 2012) to argue that the Court lacks jurisdiction over four of the five claims because they are unauthorized "second or successive" claims. (Doc. 24 at 16.) Although Respondent briefly argued that Hahn's claims are also procedurally barred or untimely, it expressly reserved those defenses "for a later date" because the Court's order for a limited answer "did not request the government's position on whether the claims are procedurally defaulted" or untimely. (*Id*.)

The undersigned determined that *Prendergast* did not apply to the analysis of whether Hahn's claims are "second or successive" and recommended the Court deny Respondent's request for dismissal of Hahn's claims for lack of jurisdiction. (Doc. 32.) In so doing, the Court observed that the "threshold inquiry into whether an application is 'second or successive,'" i.e., whether the court has jurisdiction over the application, is distinct from the "subsequent inquiry into whether claims in a successive application must be dismissed" for other reasons, including untimeliness. (*Id*. at 9 (quoting *Magwood v. Patterson*, 561 U.S. 320, 336–37, 340 (2010) (stating that the "procedural-default rules continue to constrain review of claims in all applications, whether the applications are 'second or successive' or not")).) Because Respondent had expressly reserved its

argument on whether Hahn's claims were timely, the undersigned did not address that issue. (*Id.* at 14.) The Court adopted the undersigned's proposed findings of fact and ordered Respondent to file a complete response to Hahn's Motion. (Doc. 35.) Respondent timely filed a Response on July 10, 2024. (Doc. 45.) The Court extended the time to file a Reply to August 23, 2024, and Hahn filed a Reply on August 26, 2024. (Docs. 49; 50.)

Because Respondent neither raised nor expressly waived a statute of limitations defense, the Court then ordered supplemental briefing on the timeliness of Hahn's claims. (Doc. 51.) *See Day v. McDonough*, 547 U.S. 198, 209–210 (2006) ("[D]istrict courts are permitted . . . to consider, *sua sponte*, the timeliness of" claims in a habeas petition when untimeliness is clear from the petition, so long as the "parties [have] fair notice and an opportunity to present their positions." (citations omitted)); *Kilgore v. Att'y Gen. of Colo.*, 519 F.3d 1084, 1089 (10th Cir. 2008) ("A petition's untimeliness must either be pled by the government as an affirmative defense[] or be clear from the face of the petition itself." (citations omitted)). Respondent filed its supplemental brief on September 12, 2024, and Hahn filed his Response on September 20, 2024. (Docs. 52–53). Respondent did not file an optional Reply.

## II. Discussion

In the Amended Motion, Hahn raises five grounds for relief: (A) Bernalillo County Sheriff's Officers violated his rights under the Fourth and Fifth Amendments by searching his home in December 1999 without probable cause, exceeding the scope of the warrant, and concealing information related to the search warrant, and his federal trial counsel was ineffective in addressing his Fourth Amendment suppression claims; (B) he received ineffective assistance of counsel at trial when a stipulation was entered as to the number of marijuana plants; (C) the trial court erred in instructing the jury of its burden of proof and on the statutory definition of "marihuana;" (D) he is actually innocent of Count 1 due to a change in law; and (E) the Court

violated the Ex Post Facto Clause in 2020 by sentencing him based on the 2018 Guidelines, which included a two-level increase for maintaining a premises for marijuana manufacturing or distribution that was not included in the 1998 Guidelines. (Doc. 15 at 3.)

Before addressing the substance of Hahn's claims, the Court addresses two matters. On July 29, 2024, Hahn filed a Motion to Extend the Record in Support of Section 2255 Motion. (Doc. 48). In this motion, he seeks to expand the record to include portions of the case docket from his New Mexico state case, Case No. D-202-CR-2000-00314. These docket entries relate to Hahn's Claim A. Specifically, he states that these docket entries corroborate his assertion that a motion to unseal the January warrant was made in his state case. (*Id.* at 2–3.) Rule 7 of the Rules Governing Section 2255 Proceedings allows the Court to expand the record to include "letters predating the filing of the motion, documents, exhibits, and answers under oath to written interrogatories propounded by the judge" and affidavits. Rules Governing § 2255 Cases, Rule 7(b). Although the docket from the New Mexico state case does not necessarily fall under the Rule 7(b) items, the Court nevertheless grants Hahn's motion. Hahn asserts that the New Mexico docket entries support his contention that a motion to unseal was filed, and the New Mexico docket entries do support this contention. Thus, the Court grants Hahn's request to expand the record, and the Court will consider the docket entries as part of the record when considering Claim A.[4]

In addition, the Court requested additional briefing from the parties on the timeliness of Hahn's claims. After additional briefing, Respondent has not convinced the Court that four of the five claims are untimely. Thus, the Court will proceed to consider whether Hahn's claims are procedurally barred on other grounds and/or will consider the merits of Hahn's claims. As will be

---

[4] These docket entries support Hahn's contention that a motion to unseal the warrant was filed in July 2000. As will be discussed below, however, the docket entries do not help Hahn's substantive argument that ineffective assistance of counsel or a *Brady* violation prevented him from having a full and fair opportunity to litigate his Fourth Amendment claim.

stated below, I find that Claims A and C are procedurally barred, and Hahn cannot meet any exceptions to the procedural bar. I further find that Claims B, D, and E fail on the merits.

**A. Claim A:  Review of Hahn's Fourth Amendment Claim is barred under *Stone* because he had a full and fair opportunity to litigate this claim before trial, and Hahn does not show that ineffective assistance of counsel or a *Brady* violation affected his full and fair opportunity to litigate his claim.**

A brief factual background is necessary to understand Claim A, which revolves around three search warrants. Two of the warrants (the December Warrant and January Warrant) were issued by a New Mexico state court, and the February Warrant was issued by this Court. Two of the warrants (the December Warrant and the February Warrant) specifically relate to the charges at issue in the motion currently under review.

In December 1999, officers executed a search warrant on Hahn's residence (the December Warrant). (Doc. 6 at 19–25; CR Doc. 46 at 5–14.) The December Warrant was based on information obtained from a confidential informant and surveillance on Hahn's residence. (*Id.*) This December Warrant, and the evidence of marijuana activity and possession of firearms obtained as a result of the December Warrant, led to the charges against Hahn in this case. (CR Doc. 1.)[5] In January 2000, a New Mexico state court issued another search warrant related to an investigation of whether Hahn was involved in a triple-homicide (the January Warrant). (Doc. 6 at 26–46.) In February 2000, this Court issued a third search warrant for Hahn's residence for evidence relating to marijuana, firearms, child pornography, and other criminal activity. (CR Doc. 46 at 15–23.)

On June 29, 2000, Hahn's counsel filed a motion to suppress evidence obtained through the December and February Warrants (the Motion to Suppress). (CR Doc. 46.) On November 7,

---

[5] Officers also found evidence of child pornography during the execution of that search warrant which led to charges against Hahn in a separate federal case, *United States v. Hahn*, 00-cr-1344 JAP (D.N.M.).

2000, the Court held a hearing on the motion. (*See* CR Doc. 72.) Hahn's counsel argued that the affidavit for the December Warrant did not provide probable cause because it did not include information about the reliability of the confidential informant and because the information in the affidavit was stale. (*See* CR Docs. 46; 72.) Defense counsel also argued that the February Warrant relied on the December Warrant, which Hahn argued was improperly issued. (CR Doc. 46). Defense counsel asked the Court to suppress all evidence seized through the December and February Warrants and attached copies of both warrants to the motion. (*Id.*) Hahn did not mention the January Warrant in the Motion to Suppress. (*Id.*) The Court denied the Motion to Suppress on November 7, 2000. (*See* Doc. 72.)

Hahn now argues that officers violated his Fourth and Fifth Amendment rights by searching his home in December 1999.[6] Specifically, he argues there was no probable cause to obtain the December Warrant, the December Warrant is unconstitutionally overbroad, and officers exceeded the scope of the December Warrant. (Doc. 15 at 17–24.) He also contends that the December Warrant was a pretext for a "fishing expedition . . . for evidence of [Hahn's] involvement in" a homicide because the officers did not have probable cause at that time to seek the January Warrant. (*Id.* at 7–15.) Relatedly, Hahn asserts that he was denied a full and fair opportunity to litigate his Fourth Amendment claims before trial because (1) the "Prosecution" concealed the January Warrant in violation of its obligations under *Brady v. Maryland*, 373 U.S. 83 (1963), and (2) his trial counsel was ineffective by (a) failing to challenge the probable cause basis for or the execution of the December Warrant, and (b) not arguing that the December 1999 search was a pretextual effort to investigate Hahn for homicide. (Doc. 15 at 6, 8, 17 (stating that "if counsel had timely    and    diligently    investigated    and    developed    the    evidence    associated    with    the

---

[6] Hahn alleges a Fifth Amendment violation but fails to develop any argument to establish that his Fifth Amendment rights were violated.

[January Warrant] affidavit," that "effort would have enabled counsel to support" a Fourth Amendment challenge to the December Warrant).)

Claim A is procedurally barred. A petitioner may not obtain relief on habeas review "on the ground that evidence obtained in an unconstitutional search or seizure was introduced at his trial" if the petitioner was afforded "an opportunity for full and fair litigation of a Fourth Amendment claim . . . ." *Stone v. Powell*, 428 U.S. 465, 494 (1976). "An 'opportunity for full and fair litigation' includes, but is not limited to, the procedural opportunity to raise or otherwise present a Fourth Amendment claim." *Gamble v. Oklahoma*, 583 F.2d 1161, 1165 (10th Cir. 1978). The Tenth Circuit has stated that "[a]n 'opportunity' for full and fair consideration requires at least 'the procedural opportunity to raise or otherwise present a Fourth Amendment claim,' a 'full and fair evidentiary hearing,' and 'recognition and at least colorable application of the correct Fourth Amendment constitutional standards.'" *United States v. Lee Vang Lor*, 706 F.3d 1252, 1258 (10th Cir. 2013) (quoting *Gamble*, 583 F.2d at 1165). "Ineffective assistance of counsel may deny a defendant this opportunity." *Id.* (citing *United States v. Cook*, 997 F.2d 1312, 1318 (10th Cir. 1993)). Similarly, "lack of access to" evidence may deprive a defendant "of a full and fair opportunity to litigate his Fourth Amendment claim." However, "[a] defendant is not deprived of a full and fair opportunity to litigate simply because he does not *discover* all potentially relevant evidence until after his suppression hearing." *Id.* at 1259 (emphasis added). Rather, the lack of evidence deprives a defendant of a full and fair opportunity to litigate only if the Government *withholds* material evidence. *Id.* ("Absent ineffective assistance of counsel or government concealment, a defendant cannot claim that the mere existence of undiscovered material evidence deprived him of an *opportunity* to litigate his claim."). As outlined below, I find that Hahn had a full and fair opportunity to litigate his Fourth Amendment suppression claims.

First, Hahn had a procedural opportunity to raise his claims: he filed a motion to suppress and the Court held a hearing on it. (*See* CR Doc. 72.) Hahn does not contend the hearing was inadequate or that the Court applied the incorrect "Fourth Amendment constitutional standards." *See Lee Vang Lor*, 706 F.3d at 1258 (quotation omitted). Thus, Hahn cannot now raise a Fourth Amendment claim, and it is procedurally barred by *Stone* unless he can demonstrate an applicable exception. He cannot.

Hahn does not show that his ability to litigate his Fourth Amendment claim was hindered because evidence was concealed from him. First, although not settled in the Tenth Circuit, *Brady* likely does not apply in the context of suppression motions or hearings. *See United States v. Muhtorov*, 20 F.4th 558, 623 & n.41 (10th Cir. 2021) (stating it is an open question whether *Brady's* disclosure requirements are applicable at the motion to suppress stage and the Tenth Circuit has "hinted" that *Brady* does not apply to suppression motions); *Lee Vang Lor*, 706 F.3d at 1256, n.2 ("Suppression hearings do not determine a defendant's guilt or punishment, yet *Brady* rests on the idea that due process is violated when the withheld evidence is material either to guilt or to punishment.") (quotation marks and citations omitted).

Second, even if *Brady* does apply, Hahn does not show the United States committed a *Brady* violation. "To establish a *Brady* violation," Hahn must first show that the United States concealed evidence from him. *See Hooks v. Workman*, 689 F.3d 1148, 1179 (10th Cir. 2012). Hahn asserts that the "Prosecution concealed" the January Warrant by opposing his motion asking the state court to unseal the January Warrant. (Doc. 15 at 14, 15.) To begin, Hahn has not shown that the *United States* was involved in this supposed violation. The January Warrant was not at issue in Hahn's federal case. And in the New Mexico state case, the "Prosecution" opposing the motion to unseal was the State of New Mexico, not the United States. (*See* Docs. 6 at 10–11; 48 at 5.)

Thus, both Hahn's contentions and the record demonstrate that the United States was not involved in any alleged concealment of evidence. Next, Hahn has not shown that the United States *concealed* or *suppressed* evidence. Rather, he acknowledges that the January 2000 search warrant affidavit was (1) issued by a state court and was under seal in the state court proceedings, and (2) the state court denied his request to provide him or his counsel access to it. (Doc. 15 at 14.) *Brady* does not require the United States to disclose evidence that is not in its possession or to seek out information from third parties. *See United States v. Beers*, 189 F.3d 1297, 1304 (10th Cir. 1999); *United States v. Tierney*, 947 F.2d 854, 864 (8th Cir. 1991). Accordingly, I find the United States was not obligated under *Brady* to obtain the affidavit and provide it to Hahn. Thus, Hahn cannot demonstrate that any alleged government concealment deprived him of a full and fair opportunity to litigate his claim.

Hahn also argues that his counsel's ineffectiveness deprived him of a full and fair opportunity to litigate his suppression claims both "pretrial and on direct appeal." (Doc. 15 at 16.) To establish that his counsel was ineffective, Hahn must show that (1) "counsel's representation fell below an objective standard of reasonableness" and (2) "the deficient performance prejudiced the defense." *See Strickland v. Washington*, 466 U.S. 668, 687–88 (1984). "If [Hahn] is unable to show either 'deficient performance' or 'sufficient prejudice,' his claim of ineffective assistance necessarily fails." *Hooks v. Workman*, 606 F.3d 715, 724 (10th Cir. 2010) (citation omitted).

Hahn has not carried his burden to show his counsel's conduct was unreasonable. As to the assessment of counsel's performance, "[j]udicial scrutiny of counsel's performance must be highly deferential[,]" and "every effort [must] be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." *Strickland*, 466 U.S. at 689. "Court[s] must indulge a strong

presumption that counsel's conduct" was reasonable, and "the defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy." *Id.* (quotation marks and citation omitted); *see also United States v. Taylor*, 454 F.3d 1075, 1079 (10th Cir. 2006). For counsel's performance to be constitutionally defective, it must have been "completely unreasonable, not merely wrong . . . ." *Hoxsie v. Kerby*, 108 F.3d 1239, 1246 (10th Cir. 1997) (quoting *Hatch v. Oklahoma,* 58 F.3d 1447, 1459 (10th Cir.1995)). Counsel's conduct was reasonable if it fell "within the wide range of reasonable professional assistance that might be considered sound trial strategy." *Moore v. Reynolds*, 153 F.3d 1086, 1096 (10th Cir. 1998) (citing *Strickland*, 466 U.S. at 689). A movant cannot meet this substantial burden with vague, general, or conclusory allegations; instead, to prevail, a movant must allege specific conduct by counsel that was allegedly unreasonable. *Anderson v. Att'y Gen. of Kan.*, 425 F.3d 853, 858–59 (10th Cir. 2005).

Hahn contends that defense counsel was ineffective because they did not challenge the December Warrant's probable cause or "overbroad language," the scope of the search, and the "wholesale seizure of property." (Doc. 15 at 16.) In fact, his defense counsel *did* argue that the December Warrant lacked probable cause. (CR Docs. 46; 72.) Moreover, Hahn's conclusory statements that his counsel should have raised other arguments do not show they were ineffective. *See United States v. Offineer*, No. 23-7019, 2024 WL 63993, at *4 (10th Cir. Jan. 5, 2024) ("We do not credit ineffective-assistance claims that are 'impermissibly vague,' because, among other reasons, 'conclusory allegations . . . do not satisfy *Strickland*'s prejudice inquiry.'" (quoting *United States v. Pena*, 566 F. App'x 645, 650 (10th Cir. 2014)); *United States v. Pullen*, No. 95-40009-01-SAC, 1997 WL 823572, at *3 (D. Kan. Nov. 26, 1997) ("The mere fact that neither counsel

was successful in suppressing the evidence seized during the search of the vehicle does not prove that their respective performances were ineffective.").

Hahn also argues that counsel was ineffective by not arguing that the December Warrant was a pretext for the January Warrant. (Doc. 15 at 16.) Hahn is primarily arguing that the January Warrant seeking evidence of Hahn's involvement in a triple-homicide should not have been issued. (*Id.* at 7.) Yet he cannot litigate his state law case or the January Warrant here. Furthermore, Hahn does not demonstrate that the January Warrant, or any evidence obtained therefrom, was used against him in his federal case here. In this case, counsel was defending Hahn against the marijuana and 924(c) charges—counsel was not defending Hahn in the state homicide case. And as noted above, Hahn's counsel challenged the two search warrants (December Warrant and February Warrant) at issue in this case. Thus, Hahn's contention that his defense counsel was ineffective in challenging the December Warrant as pretext or subterfuge for investigating murder charges against him is irrelevant to his ineffective assistance of counsel claim. In addition, Hahn specifically states that his counsel sought to obtain the January Warrant in the state case, but the state judge denied the motion. (Doc. 6 at 10–11.) Thus, Hahn's counsel did indeed make efforts to obtain the January Warrant but was prohibited from doing so.

To the extent Hahn argues that the December Warrant was pretextual in and of itself, his argument fails because there was independent probable cause to support the December Warrant. Hahn's counsel argued in the Motion to Suppress that the December Warrant lacked probable cause, and the Court denied his motion. (CR Docs. 46; 72.) Finally, to the extent applicable, Hahn's counsel's decision not to present an argument related to the January Warrant falls squarely within the category of strategic decisions entitled to deference. *Cf. United States v. Hinds*, 2 F. App'x 420, 423 (6th Cir. 2001) ("Trial strategy includes the decision not to file certain motions if, after

investigation, doing so would not be necessary or advantageous.") (citation omitted). Accordingly, Hahn cannot demonstrate that his counsel's conduct was unreasonable.

As to the prejudice prong, when a petitioner alleges that counsel was ineffective because they failed "to litigate a Fourth Amendment claim competently[,] . . . the defendant must also prove that his Fourth Amendment claim is meritorious and that there is a reasonable probability that the verdict would have been different absent the excludable evidence in order to demonstrate actual prejudice." *Kimmelman v. Morrison*, 477 U.S. 365, 375 (1986). Neither "mere speculation" nor "a conceivable effect on the outcome" is sufficient to satisfy the movant's burden. *Byrd v. Workman*, 645 F.3d 1159, 1168–69 (10th Cir. 2011) (quotation marks and citations omitted); *see also Turrentine v. Mullin*, 390 F.3d 1181, 1205 (10th Cir. 2004) (showing that the error had a "conceivable effect" on the outcome is insufficient to show prejudice) (quoting *Strickland*, 466 U.S. at 693).

Hahn attempts to show that he was prejudiced by defense counsel's conduct because "if counsel had timely and diligently investigated and developed the evidence associated with the [January Warrant]" and argued that the December Warrant was unconstitutionally overbroad, "that evidence and effort would have enabled counsel to" obtain a "blanket suppression of [the] evidence" seized in the resulting search. (Doc. 15 at 17.) But Hahn has not shown a reasonable probability that the Court would have found the December Warrant overbroad even if defense counsel had obtained the January Warrant. Hahn asserts that the December Warrant was overbroad because it "authorized the search for and seizure of 'any other fruits of drug trafficking' and 'any and all records computerized or otherwise' that 'ha[ve] been obtained or [are] being possessed in a manner that constitutes [a] criminal offense, [are] designed or intended for use or which ha[ve]

been used as a means of committing a criminal offense, or would be material evidence in criminal prosecution.'" (Doc. 15 at 22 (quoting Doc. 46 at 6).)

Hahn argues this language is like the language at issue in *Cassady v. Goerman*, 567 F.3d 628 (10th Cir. 2009) and *United States v. Suggs*, 998 F.3d 1125 (10th Cir. 2021), but those cases are readily distinguishable. In *Suggs*, for example, the warrant did not reference a specific offense and thus the officers were not constrained to searching for the fruits of a particular crime. *Suggs*, 998 F.3d at 1134. In *Cassady*, the same was true. *Cassady*, 567 F.3d at 635 (the "warrant did not confine the scope of the search to any particular crime"). Here, in contrast, the phrases Hahn finds offensive are all found within a list of items related to marijuana manufacturing or trafficking, as well as a discussion of how "records and writings" are used in the sale of marijuana. (CR Doc. 46 at 5–6.) Moreover, the affidavit describes the confidential source's statements about Hahn's "large, indoor Marijuana grow" and the affiant's investigation of Hahn based on the information that he was growing and distributing marijuana. (*Id*.) *See Suggs*, 998 F.3d at 1134 ("A supporting affidavit can sometimes cure a warrant's lack of particularity.") (citation omitted). Hence, the officers were bound by the references to the specific crime under investigation. *See United States v. Clark*, 673 F. Supp. 3d 1245, 1265–66 (D. Kan. 2023) (finding similar language was not overbroad where the warrant "twice defined the crime for which there was probable cause" and each of the "catchall paragraphs" was "subject to the preface which limited the officers to searching for and seizing items related to the crime" specified in the warrant). I find that Hahn has not shown that these portions of the December Warrant are overbroad.

Moreover, Hahn has not shown that the Court would have suppressed all the evidence obtained through the December Warrant even if his counsel had been successful in a pretext argument. Indeed, Hahn acknowledges that blanket suppression of evidence is an extraordinary

remedy. (Doc. 15 at 22.) But although he asserts that severance does not apply, he does not analyze Tenth Circuit law on the severability doctrine, under which "[t]he infirmity of part of a warrant requires the suppression of evidence seized pursuant to that part of the warrant, but does not require the suppression of anything described in the valid portions of the warrant (or lawfully seized—on plain view grounds, for example—during . . . execution [of the valid portions] )." *United States v. Sells*, 463 F.3d 1148, 1150 (10th Cir. 2006) (quotation omitted); *see also United States v. Naugle*, 997 F.2d 819, 822–23 (10th Cir.1993). Valid portions of a warrant can be severed from invalid portions if they are "sufficiently particularized, distinguishable from the invalid portions, and make up the greater part of the warrant." *Naugle*, 997 F.2d at 822 (citation omitted). Severance is not appropriate "if the invalid portions so predominate the warrant that the warrant in essence authorizes 'a general, exploratory rummaging in a person's belongings.'" *Sells*, 463 F.3d at 1158 (quoting *Coolidge v. New Hampshire*, 403 U.S. 443, 467 (1971)). Here, the limited portions Hahn identifies are distinct from the rest of the warrant, which permits seizure of marijuana in any form, paraphernalia used for the packaging, distribution, weighing, smoking, cooking, sale or other possession of marijuana, items used to manufacture or cultivate marijuana, and records which would reflect the sale or purchase of any of those items, among other provisions. (CR Doc. 46 at 5.) Hahn does not argue that these provisions are not sufficiently particularized nor that the complained-of provisions predominate the December Warrant. (*See* Doc. 15.) Given the focus of the warrant on marijuana cultivation, I find the complained-of portions do not predominate. Because he has not shown that an argument based on pretext would have been meritorious or that suppression of evidence obtained from those portions would have changed the outcome of the trial, Hahn has not met his burden to demonstrate he was prejudiced by his defense counsel's failure to raise that argument. *See Kimmelman*, 477 U.S. at 375. Hahn's failure to show either deficient

performance or prejudice dooms his argument that ineffective assistance of counsel denied him a full and fair opportunity to litigate Claim A before trial.

To summarize: I find Hahn has not shown that the United States concealed evidence nor that his defense counsel's performance was deficient. Consequently, Hahn fails to demonstrate that his litigation opportunity was hindered. I therefore find that *Stone* bars review of Hahn's claim that his Fourth Amendment rights were violated because he had a full and fair opportunity to litigate the issues before trial. Hence, Hahn cannot raise Claim A in this habeas proceeding.

**B.  Claim B: Hahn has not shown defense counsel were ineffective.**

In Claim B, Hahn argues that defense counsel were ineffective because they failed to investigate the number of marijuana plants he was growing and, consequently, erred by stipulating that he was growing 100 or more plants. (Doc. 15 at 4–7.) He maintains that he was prejudiced by the stipulation because (1) had counsel shown he had fewer than 100 plants, he would not have been sentenced to the 60-month mandatory minimum sentence for Count 1, and (2) because he did not agree to the stipulation, he was deprived of his chosen defense and his autonomy. (*Id*. at 6–7.)

To show ineffective assistance of counsel, Hahn must show that his counsel's decision to stipulate to the number of marijuana plants "fell below an objective standard of reasonableness" and that there is a reasonably probability that, without the stipulation, the outcome of the trial would have been different. *Strickland*, 466 U.S. at 687–88. The Court starts with the presumption that "an attorney's conduct is objectively reasonable because it could be considered part of a legitimate trial strategy." *Bullock v. Carver*, 297 F.3d 1036, 1047 (10th Cir. 2002) (citation omitted). As noted above, neither "mere speculation" nor "a conceivable effect on the outcome" is sufficient to satisfy the movant's burden. *Byrd*, 645 F.3d at 1173; *Turrentine*, 390 F.3d at 1205 (same); *Strickland*, 466 U.S. at 693 (same).

Hahn cannot show that his counsel's performance fell below an objective standard of reasonableness. "In the absence of an allegation that the stipulation was false and involuntary, [a defendant] does not allege an adequate predicate for an ineffective counsel claim." *United States v. Mejia-Alarcon*, 995 F.2d 982, 992 (10th Cir. 1993). Hahn does not contend that the stipulation was involuntary and false; instead, he conclusorily states that he did not agree to the stipulation and was deprived of his chosen defense. Specifically, he asserts that he wanted to litigate the plant count to demonstrate that he had 98 plants under cultivation and two dozen fresh cut clones that had not yet formed roots. (Doc. 15 at 6.) Yet Hahn's contention that he wanted to litigate the plant count is contradicted by the record because it repeatedly reflects Hahn's intended trial strategy to admit the marijuana offenses and litigate the firearm charges. Hahn signed a written stipulation acknowledging 117 marijuana plants were seized from his residence, that those plants were in fact marijuana, and that an expert in the field of chemistry and controlled substances accurately tested the plants to be marijuana. Hahn was present at trial when the trial judge read the stipulation to the jury and informed the jury that Hahn had signed the stipulation. (CR Doc. 182 at 133–35.) Hahn did not object to this stipulation. *See Mejia-Alarcon*, 995 F.2d at 991–92 (noting that the defendant did not object to the stipulation and that the defendant did not allege that the stipulation was involuntary and thus could not "allege an adequate predicate for an ineffective counsel claim"). Critically, Hahn even testified at trial admitting that he was growing marijuana and testified that what the government said about him growing marijuana was true. (CR Doc. 182 at 296.) Thus, Hahn cannot make a threshold showing that the stipulation was false and not voluntary, and Hahn also cannot show that his counsel's performance fell below objective reasonableness.

Even if Hahn could demonstrate that his counsel's performance was not objectively reasonable, Hahn has not demonstrated that the stipulation to the plant count was prejudicial. *See*

*United States v. Foreman*, No. 02-cr-135 TCK, 2008 WL 4415335, at *4 (N.D. Okla., Sept. 23, 2008) (stating that the defendant "fails to meet the prejudice prong of *Strickland* by failing to show that, but for the stipulation, 'the outcome of the proceeding likely would have changed'") (quoting *Miller v. Champion*, 161 F.3d 1249, 1256–57 (10th Cir. 1998)). Here, the Government presented evidence at trial regarding the number of marijuana plants. Specifically, a witness testified that there were 117 marijuana plants seized from Hahn's residence and that the government performed testing samples on those 117 marijuana plants. (CR Doc. 182 at 35–36, 133.) In addition, evidence was presented as to the many marijuana grow rooms, high intensity grow lights/lamps, and high electrical bills. (CR Doc. 182 at 32–40.) Another witness testified that two or three individuals helped with the grow operation. (*Id.* at 74–75.) Finally, as noted above, Hahn testified at trial that he was growing marijuana, and he testified that what the government said about him growing marijuana was true. (CR Doc. 182 at 296.) Thus, there was evidence at trial, in addition to the stipulation, that Hahn had more than 100 plants. Accordingly, Hahn cannot demonstrate prejudice even if counsel's conduct was objectively unreasonable.

In sum, Hahn cannot establish an ineffective assistance of counsel claim under either prong of *Strickland*.

### C.  Claim C: Review of Hahn's instructional error claim is procedurally barred.

With the exception of ineffective assistance of counsel claims, "[w]hen a defendant fails to raise an issue on direct appeal, he is barred from raising the issue in a § 2255 proceeding, unless he establishes either cause excusing the procedural default and prejudice resulting from the error or a fundamental miscarriage of justice if the claim is not considered." *United States v. Cox*, 83 F.3d 336, 341 (10th Cir. 1996) (citation omitted); *Massaro v. United States*, 538 U.S. 500, 509 (2003) (stating that "failure to raise an ineffective-assistance-of-counsel claim on direct appeal does not bar the claim from being brought in a later, appropriate proceeding under § 2255"). "To

establish 'cause' requires a defendant to show some external objective factor—such as governmental interference, unavailability of the relevant factual or legal basis, or ineffective assistance of counsel—prevented him from raising the issue on direct appeal." *United States v. Torres-Laranega*, 473 F. App'x 839, 842 (10th Cir. 2012) (citing *Murray v. Carrier*, 477 U.S. 478, 488 (1986)) (subsequent citation omitted). To show prejudice, a defendant must show the error was of "constitutional dimension[] that worked to his actual and substantial disadvantage." *United States v. Snyder*, 871 F.3d 1122, 1128 (10th Cir. 2017) (quotation marks and citation omitted). Petitioners may also overcome procedural bars by showing the alleged errors have "probably resulted in the conviction of one who is actually innocent." *Bousley v. United States*, 523 U.S. 614, 623 (1998) (quoting *Murray*, 477 U.S. at 496); *see also United States v. Barajas-Diaz*, 313 F.3d 1242, 1248 (10th Cir. 2002) (same). To prevail on an "actual innocence" claim, a petitioner "must show that "in light of all the evidence, it is more likely than not that no reasonable juror would have convicted him." *Barajas-Diaz*, 313 F.3d at 1248 (quoting *United States v. Powell*, 159 F.3d 500, 502 (10th Cir. 1998)).

In Claim C, Hahn argues the trial court erred in instructing the jury on the burden of proof and on the statutory definition of "marihuana." (Doc. 15 at 3, 25–26.) Hahn did not assert this argument on direct appeal, and it is, therefore, procedurally barred unless he shows cause for not raising that argument and actual prejudice arising from that failure. Because Hahn puts forward no arguments on either front as to this claim, I find he has not met his burden. This claim is procedurally barred from review on Hahn's § 2255 Motion. *See Cox*, 83 F.3d at 341.

**D.  Claim D: The Agriculture Improvement Act does not apply retroactively.**

Hahn asserts he is not guilty of Count 1 because Congress changed the definition of "marijuana" in the Agriculture Improvement Act of 2018 (the AIA), which amended the Controlled Substances Act (the CSA) to differentiate between hemp and marijuana. (Doc. 15 at

25.) *See* Pub. L. No. 115-334, § 12619, 132 Stat. 4490, 5018; 21 U.S.C. § 802(16)(A), (B)(i); *see also United States v. Williams*, 61 F.4th 799, 802 (10th Cir. 2023), *cert. denied*, No. 22-7736, 2024 WL 2805744 (U.S. June 3, 2024); *United States v. Johnson*, No. CR 18-0220 JB, 2021 WL 53338, at *23 (D.N.M. Jan. 6, 2021). He argues that his "conviction constitutes a miscarriage of justice . . . because [he] is actually innocent of a [CSA] offense" under the new definitions in the CSA. (Doc. 15 at 26.)

Because Congress did not expressly state that the AIA retroactively applies to conduct before its effective date, I conclude that the amendments do not apply to Hahn's 1999 conduct. *See* § 12,619, 132 Stat. at 5018; *United States v. Liu*, No. 18 CR 162-1, 2022 WL 180155, at *2 (N.D. Ill. Jan. 20, 2022) ("[N]othing in the text of the [AIA] indicates any intent to make retroactive its amendment to the definition of marijuana") (citation omitted); *Williams*, 61 F.4th at 809 ("Moreover, the [AIA] simply excluded hemp from its definition of a controlled substance, it did not repeal penalties for marijuana convictions. What it did do is de-criminalize hemp.").

In addition, to the extent Hahn argues that his 2020 sentencing was improper because he should not have been sentenced "under current law," this position is not supported in law. The AIA "did not repeal penalties for marijuana convictions." *Williams*, 61 F.4th at 809 (suggesting that, therefore, the effect of the federal saving statute need not be analyzed). Even if it had, the federal saving statute "provides that a new criminal statute that 'repeal[s]' an older criminal statute shall not change the penalties 'incurred' under that older statute 'unless the repealing Act shall so expressly provide.'" *See Dorsey v. United States*, 567 U.S. 260, 272 (2012) (quoting 1 U.S.C. § 109). It is well-settled that "penalties are 'incurred' under the older statute when an offender becomes subject to them, *i.e.,* commits the underlying conduct that makes the offender liable." *Id.* (citations omitted). Again, because there is no language in the AIA expressing Congress's intent

that it applies retroactively, Hahn's position must be rejected. *Cf. United States v. Campbell*, 767 F. Supp. 2d 873, 875 (E.D. Tenn. 2011) (although the Fair Sentencing Act of 2010 modified penalties for certain crimes but "contains no express statement that it is retroactive nor can [the court] infer any such express intent from its plain language[,]" the court "must apply the penalty provision in place at the time [the defendant] committed the crime in question."). Thus, Hahn's claim that he is not guilty of Count I because Congress changed the definition of marijuana fails.

### E.  Claim E: The 2020 sentence did not violate the Ex Post Facto Clause.

Finally, Hahn contends that the Court violated the Ex Post Facto Clause in 2020 by utilizing the 2018 United States Sentencing Guidelines (U.S.S.G.) Manual and not giving him the benefit of "Amendment 782," which became effective between his initial sentencing in 2001 and the 2020 resentencing. (Doc. 15 at 24.) I disagree.

"Amendment 782 reduces the base offense levels assigned to drug quantities in U.S.S.G. § 2D1.1, effectively lowering the Guidelines minimum sentences for drug offenses." *United States v. Izenberg*, 645 F. App'x 614, 617 (10th Cir. 2016) (citing U.S.S.G., suppl. to app. C, amend. 782 (U.S. Sentencing Comm'n 2014)). In addition, Amendment 782 added a section directing an increase of two levels for maintaining a premises for the purpose of manufacturing or distributing a controlled substance. U.S.S.G. § 2D1.1(b)(12). Amendment 782 became effective in 2014 and applies retroactively. *See Izenberg*, 645 F. App'x at 617.

In 2001, Hahn's offense level was calculated according to the 1998 Guidelines. The base offense level for Count 1 was 16 plus two levels for being an "organizer, leader, and manager" of his marijuana grow operation under § 3B1.1(c) for a total offense level of 18. (CR Doc. 133.) In 2020, the Court applied the 2018 Guidelines and Amendment 782 and found (1) a base offense level of 14 under § 2D1.1(c)(13), increased by (2) two levels for maintaining a premises for manufacturing or distributing marijuana under § 2D1.1(b)(12) (the Stash House Enhancement),

and (3) two levels "for being an organizer, leader, and manager" under § 3B1.1(c). (CR Doc. 214 at 5.) *See* Amendment 782 (reducing § 2D1.1(c)(13) two levels and adding two levels for the Stash House Enhancement). Hence, the 2001 sentence and 2020 sentence were both based on an identical offense level of 18. (CR Docs. 133; 251 at 3.)

Hahn argues that it was error to add two levels for the Stash House Enhancement because that enhancement did not exist in the 1998 Guidelines and applying it would violate the Ex Post Facto Clause because his total offense level in 2020 should be calculated at 16 (14+2 for his role under § 3B1.1(c))—not 18. (Doc. 15 at 25.) Thus, Hahn seeks to gain the benefit of Amendment 782's reduction in the base offense level and to avoid Amendment 782's Stash House Enhancement. But there is "no constitutional requirement of retroactivity that entitles defendants sentenced to a term of imprisonment to the benefit of subsequent Guidelines amendments." *Dillon v. United States*, 560 U.S. 817, 828 (2010). Further, the Guidelines prohibit Hahn's approach. Courts "must apply the version of the Guidelines in effect at the time of sentencing unless doing so would violate the *Ex Post Facto* Clause." *United States v. Duane*, 533 F.3d 441, 447 (6th Cir. 2008) (citing U.S.S.G. § 1B1.11(a), (b)(1)). "If the court determines that use of the Guidelines Manual in effect on the date that the defendant is sentenced would violate the ex post facto clause of the United States Constitution, the court shall use the Guidelines Manual in effect on the date that the offense of conviction was committed." U.S.S.G. § 1B1.11(b)(1). Courts may not pick and choose among the Guidelines' provisions: "The Guidelines Manual in effect on a particular date shall be applied in its entirety. The court shall not apply, for example, one guideline section from one edition of the Guidelines Manual and another guideline section from a different edition of the Guidelines Manual." U.S.S.G. § 1B1.11(b)(2); *see also United States v. Weiss*, 630 F.3d 1263, 1275 (10th Cir. 2010). Thus, even if the two-level Stash House Enhancement was improper,

following the U.S.S.G. rules and applying the 1998 Guidelines, Hahn's offense level would still be 18. The Ex Post Facto Clause is not implicated where the application of Guidelines enacted after the defendant's conviction do not "retroactively increase the punishment for his offenses." *United States v. Green*, 644 F. App'x 830, 833 (10th Cir. 2016). Here, Hahn's offense level was 18 when he was originally sentenced, and it remained 18 when he was re-sentenced.

Hahn's real quarrel is with the increase of his criminal history category from I at the 2001 sentencing to IV at the 2020 resentencing, which resulted in an increase of the Guidelines range for Count 2 from 27–33 months to 41–51 months. (Doc. 15 at 24; CR Doc. 214.) He argues that the Court violated the Ex Post Facto Clause, his due process rights, and "fundamental fairness" when the Court included his 00cr1344 conviction when computing his criminal history category in this case. (Doc. 15 at 24.) He asks the Court to amend his criminal history category to a "II or III." (*Id.* at 25.) But Hahn does not cite any authority showing that the Court erred in its calculation of the criminal history category. Nor does Hahn dispute that the Court, on his request, considered his sentence package anew after Count 4 was vacated. Thus, it was proper for the Court to consider the entire record. Because Hahn is pro se, the Court liberally construes his filings. *See Erickson v. Pardus*, 551 U.S. 89, 94 (2007). However, the Court will not act as an advocate or "fashion . . . arguments for him . . . ." *United States v. Fisher*, 38 F.3d 1144, 1147 (10th Cir. 1994). Here, Hahn fails to develop his argument or cite to authority supporting his contentions. Accordingly, Hahn does not establish an ex post facto clause violation.

### F.  Hearing

An evidentiary hearing on a § 2255 motion must be held "[u]nless the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief." 28 U.S.C. § 2255(b). An evidentiary hearing is not necessary when a § 2255 motion contains factual allegations that are contradicted by the record or are conclusory. *United States v. Gallegos*, 459 F.

App'x 714, 716–17 (10th Cir. 2012). I find that Hahn is not entitled to an evidentiary hearing because his allegations are either contradicted by the record or are simply conclusory.

## III. CONCLUSION AND RECOMMENDATIONS

I recommend dismissing Hahn's claims. I find Hahn's arguments regarding his Motion to Suppress evidence based on the Fourth Amendment (Claim A) are procedurally barred under *Stone*. In addition, I find that he has not shown ineffective assistance of counsel at trial regarding the stipulation to the number of marijuana plants (Claim B). Hahn's claim of instructional error (Claim C) is procedurally barred. Hahn's claim that he is actually innocent based on the Agriculture Improvement Act (Claim D) is meritless because the Act does not apply retroactively. Finally, Hahn's claim (Claim E) that the Court sentenced him in 2020 in violation of the Ex Post Facto Clause fails.

Accordingly, I recommend DENYING Hahn's Petition.

---

**THE PARTIES ARE FURTHER NOTIFIED THAT WITHIN 14 DAYS OF SERVICE** of a copy of these Proposed Findings and Recommended Disposition they may file written objections with the Clerk of the District Court pursuant to 28 U.S.C. § 636(b)(1). **A party must file any objections with the Clerk of the District Court within the 14-day period if that party wants to have appellate review of the proposed findings and recommended disposition. If no objections are filed, no appellate review will be allowed.**

---

_____
DAMIAN L. MARTINEZ
UNITED STATES MAGISTRATE JUDGE