**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF NEW MEXICO**

_____

MARCUS HAHN,

      Petitioner,

v.                                          No. 21-cv-0880 KWR/DLM

UNITED STATES OF AMERICA,

      Respondent.

**<u>MEMORANDUM OPINION AND ORDER</u>**

THIS MATTER is before the Court on Petitioner Marcus Hahn's Amended Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence or Judgment by a Person in Federal Custody (Amended Motion), filed September 19, 2022. Doc. 15. Judge Martinez issued Proposed Findings and Recommended Disposition (the "PFRD") (Doc. 55) recommending that the Court deny the Amended Motion.  Petitioner objected.  Doc. 61.

In his Amended Motion, Petitioner asserts four habeas claims (Claims A-D) challenging his 20-year-old conviction, and one habeas claim (Claim E) challenging his 2020 resentencing.

After review and consideration of the filings, the Court finds that Petitioner's claims fail. Claims A-D are untimely and are therefore denied. Alternatively, assuming they are not untimely, the claims otherwise fail. Specifically, two of Petitioner's claims are procedurally barred, and Petitioner cannot demonstrate any exceptions to the procedural bar. Moreover, the Court denies Petitioner's remaining three claims on the merits.

Therefore, the Court overrules the objection to the PFRD, adopts the PFRD, and denies Petitioner's claims.

## BACKGROUND

Judge Martinez set forth the background and procedural history of this case. Petitioner stated that he did not object to the factual and procedural background in the PFRD and he expressly stated he agrees with it. Doc. 61 at 1. Therefore, the Court adopts and repeats the background as set forth in the PFRD. *See* PFRD, Doc. 55 at 1-7.

## I.    <u>Factual and Procedural Background.</u>

In 2000, a jury convicted Petitioner of manufacturing 100 or more marijuana plants and of opening and maintaining a place for the purpose of manufacturing, distributing and using marijuana (Counts 1 and 2). CR Docs. 133; 184.[1] *See also United States v. Hahn*, 2002 WL 595140, 38 F. App'x 553, 554 (10th Cir. 2002). The jury also convicted Petitioner of possessing a firearm in furtherance of the manufacture of marijuana in violation of 18 U.S.C. § 924(c) (Count 3) and of possessing a firearm in furtherance of the maintenance of a place to manufacture, distribute and use marijuana also in violation of 18 U.S.C. § 924(c) (Count 4). CR Docs. 133; 184. The Court, relying on the 1998 United States Sentencing Guidelines, imposed a sentence of 60 months for Count 1, 27 months for Count 2 (to run concurrently with the Count 1 sentence), 120 months for the first § 924(c) violation (Count 3), and 300 months for the second § 924(c) violation (Count 4). CR Doc. 133. The term for Count 3 was consecutive to Counts 1 and 2, and the term for Count 4 was consecutive to all other terms, for a total sentence of 40 years. *Id*. His total offense level was 18, and his criminal history category was I. *Id.*

### A. Direct Appeal

Petitioner appealed his sentence for the second firearm offense (Count 4) in 2002. *See Hahn*, 38 F. App'x at 554. He argued that "the statute does not authorize treating his second firearm

---

[1] References to "CR Doc." are to the docket in *United States v. Hahn*, No. 00-cr-0082 KWR/SMV (D.N.M.), the underlying criminal case.

conviction as 'second or subsequent' to the first for purposes of the statute's sentencing enhancement, because the underlying drug crimes were part of a 'continuing incident' and were 'coterminous in space and time.'" *Id.* He did not raise any other claims. CR Doc. 140. The Tenth Circuit affirmed the conviction and sentence, *Hahn*, 38 F. App'x at 555, and the Supreme Court denied his petition for writ of certiorari on January 27, 2003. CR Doc. 180.

### B. Habeas Petitions

In 2004, Petitioner moved to vacate, set aside, or correct his sentence under 28 U.S.C. § 2255. CR Doc. 141. *See also United States v. Hahn*, 191 F. App'x 758 (10th Cir. 2006). He argued that double jeopardy bars multiple § 924(c)(1) firearm convictions "based on multiple predicate offenses which are factually inseparable in terms of time, space and underlying conduct, and that § 924(c)(1) contains a number of ambiguities, requiring application of the rule of lenity." *Hahn*, 191 F. App'x at 760 (citation omitted). Petitioner claimed that these arguments were not raised on direct appeal because he received ineffective assistance of counsel. *Id.* The district court dismissed the motion on the basis that the arguments were procedurally barred and lacked merit. *Id.*

Petitioner moved to reconsider under Federal Rule of Civil Procedure 59(e). CR Doc. 150. He disputed that his double jeopardy claim had been resolved on direct appeal and moved to amend his § 2255 motion to add more evidence. *Id.* The district court treated these motions as successive § 2255 motions and transferred them to the Tenth Circuit. CR Doc. 153. The Tenth Circuit agreed that Petitioner double jeopardy claims were procedurally barred and that his ineffective assistance claims lacked merit. *Id.* at 760–61. The Tenth Circuit also agreed that Petitioner's motions to amend "qualified as second or successive and were properly referred to [the Tenth Circuit]." *Id.* at 762. It thus affirmed the district court's decision. *Id.*

In 2016, Petitioner filed a habeas petition under 28 U.S.C. § 2241 in the United States District Court for the District of South Carolina. *Hahn v. Moseley*, 931 F.3d 295, 300 (4th Cir. 2019). He argued that due to changes in Tenth Circuit law with respect to 18 U.S.C. § 924(c), he was legally innocent of Count 4. *Id.* The District Court of South Carolina denied the petition, and Petitioner appealed to the Fourth Circuit Court of Appeals. *Id.* at 297. The Fourth Circuit granted the petition and remanded with instructions to vacate Petitioner's 300-month sentence on Count 4. *Id.* at 304.[2] The District Court of South Carolina then entered an order stating that the "remaining convictions, and the sentences associated with them, remain in place, resulting in a sentence of 60 months on Count 1, a concurrent 27-month sentence on Count 2, and a consecutive 120-month sentence on Count 3, for a total custodial sentence of 180 months. All other aspects of the original sentence remain in place." CR Doc. 209. *See also Hahn v. Moseley*, C/A No. 9:16-cv-3235 JFA-BM, Doc. 59 (D.S.C. Oct. 15, 2019). This Court then issued an amended judgment sentencing Petitioner to 180 months. CR Docs. 196; 209. After Hahn requested clarification of its order, the District Court of South Carolina entered another order stating:

> To clarify, this Court (1) grants [Hahn]'s Petition for habeas corpus, (2) vacates his conviction and sentence for Count IV, (3) allows the sentencing court in the District of New Mexico to issue an amended judgment in accordance with this Court's Order (ECF No. 59), and (4) this Court does not preclude the sentencing court in the District of New Mexico from exercising its discretion to resentence [Hahn] *de novo* under the "sentencing package" doctrine.

*Hahn v. Moseley*, C/A No. 9:16-3235-JFA-BM, Doc. 62 (D.S.C. Nov. 4, 2019).

---

[2] The Fourth Circuit's decision, in which it found that Petitioner met the criteria for § 2241 collateral habeas relief, relied on a previous Fourth Circuit decision, *In re Jones*, 226 F.3d 328 (4th Cir. 2000). In 2022, the United States Supreme Court addressed the interplay between § 2241 and § 2255, and it determined that § 2255(e)'s saving clause did not permit a prisoner asserting an intervening change in law to circumvent AEDPA's restriction on second or successive § 2255 motions. *Jones v. Hendrix*, 599 U.S. 465, 471 (2022). Thus, the United States Supreme Court abrogated the Fourth Circuit's *In re Jones* decision, and Petitioner would not qualify for relief if his case were before the Fourth Circuit today.

4

Petitioner then filed a motion entitled "Motion for Status Conference and Motion for Reconsideration of this Court's Amended Judgment or, in the Alternative, Motion to Correct Sentence Under Federal Rule of Criminal Procedure 35(a)" (the Motion for Reconsideration). CR Doc. 202. He asked the Court to "reconsider its amended judgment to account for" the District Court of South Carolina's "clarified" order and the sentencing package doctrine, under which courts may "resentence a defendant on convictions that remain after he succeeds in getting one or more convictions vacated." *Id*. at 1 (quoting *United States v. Hicks*, 146 F.3d 1198, 1202 (10th Cir. 1998)). The Court characterized the Motion for Reconsideration as a substantive challenge to the amended judgment and construed it "as a § 2255 habeas petition, not a true Rule 60(b) motion." CR Doc. 209 at 8. It then granted his request for a resentencing hearing under the sentencing package doctrine, holding that "[t]he sentence in 00-82, in its entirety, was one aggregate sentence and one 'unified term of imprisonment'" because Count 4 "is interdependent of its underlying felony, Count 2" and the "sentences in Counts 1–3 also ran consecutively to the sentence in Count 4." *Id*. at 11–12 (quoting *United States v. Easterling*, 157 F.3d 1220, 1224 (10th Cir. 1998)). The Court found that, by vacating Court 4, "the District Court of South Carolina 'unbundled' the aggregate sentence in 00-82," which "potentially undermin[ed] the Court's original sentencing intent for the overall sentence." CR Doc. 209 at 11–12. It held that, therefore, "[u]nder the sentencing package doctrine, resentencing on the remaining counts of 00-82 is proper." *Id*. at 12.

In addition to the Motion for Reconsideration, Hahn filed a Motion for Reduction of his Count 3 Sentence under 28 U.S.C. § 3582(c)(1)(A)(i) from 10 years to 5 years in keeping with a change in the mandatory minimum sentence for such crimes. CR Doc. 220 at 1. He argued that, even if the Court did not reduce his sentence for that reason, the Court should reduce the sentence

for Count 3 because there were "extraordinary and compelling reasons" to do so. (*Id.* (quoting § 3582(c)(1)(A)(i)).)

On September 25, 2020, the Court, after a hearing at which Petitioner was present, amended Hahn's sentence (the Second Amended Judgment). CR Doc. 251. Specifically, the Court found, based on the 2018 Guidelines, a base offense level of 18 and criminal history category of IV resulted in a Guidelines range of 41 to 51 months for Count 2, and accordingly increased the sentence for Count 2 from 27 to 41 months, to run concurrently with the mandatory minimum 60-month sentence for Count 1. Citing "extraordinary and compelling reasons," the Sentencing Court reduced the sentence for Count 3 to 60 months, to run consecutively to the other sentences. *Id.* at 3. In sum, the Court reduced Petitioner's sentence from 180 months to 120 months.[3] *Id.* at 4.

Petitioner filed his "Second Motion to Vacate under 28 U.S.C. 2255" on September 8, 2021, (Doc. 1) and the Amended Motion on September 19, 2022. Doc. 15. Noting that the Court "lacks jurisdiction over second/successive § 2255 claims absent authorization from the Tenth Circuit," the Court ordered Respondent to file a limited answer addressing which claims, if any, are "second or successive" under 28 U.S.C. § 2255(h). Doc. 16. It also ordered Respondent to address "the extent to which Petitioner can challenge the Amended Judgment entered September 25, 2020; . . . [and] which claims, if any, are potentially cognizable (i.e. not barred as second or successive) . . . ." *Id.* at 1–2. Respondent timely filed a Limited Answer in which it relied on *Prendergast v. Clements*, 699 F.3d 1182 (10th Cir. 2012) to argue that the Court lacks jurisdiction over four of the five claims because they are unauthorized "second or successive" claims. Doc. 24 at 16. Although Respondent briefly argued that Hahn's claims are also procedurally barred or untimely, it expressly reserved those defenses "for a later date" because the Court's order for a

---

[3] Overall, Petitioner's original sentence was reduced from 480 months to 120 months.

limited answer "did not request the government's position on whether the claims are procedurally defaulted" or untimely. *Id.*

Judge Martinez determined that *Prendergast* did not apply to the analysis of whether Petitioner's claims are "second or successive" and recommended the Court deny Respondent's request for dismissal of Hahn's claims for lack of jurisdiction. Doc. 32. In so doing,  Judge Martinez observed that the "threshold inquiry into whether an application is 'second or successive,'" i.e., whether the court has jurisdiction over the application, is distinct from the "subsequent inquiry into whether claims in a successive application must be dismissed" for other reasons, including untimeliness. *Id.* at 9 (quoting *Magwood v. Patterson*, 561 U.S. 320, 336–37, 340 (2010) (stating that the "procedural-default rules continue to constrain review of claims in all applications, whether the applications are 'second or successive' or not")). Because Respondent had expressly reserved its argument on whether Petitioner's claims were timely, Judge Martinez did not address that issue. *Id.* at 14. The Court adopted the undersigned's proposed findings of fact and ordered Respondent to file a complete response to Petitioner's Motion. Doc. 35. Respondent timely filed a Response on July 10, 2024. Doc. 45. The Court extended the time to file a Reply to August 23, 2024, and Petitioner filed a Reply on August 26, 2024. Docs. 49; 50.

Because Respondent reserved and did not expressly waive a statute of limitations defense, the Court then ordered supplemental briefing on the timeliness of Petitioner's claims. Doc. 51. *See Day v. McDonough*, 547 U.S. 198, 209–210 (2006) ("[D]istrict courts are permitted . . . to consider, *sua sponte*, the timeliness of" claims in a habeas petition when untimeliness is clear from the petition, so long as the "parties [have] fair notice and an opportunity to present their positions." (citations omitted)); *Kilgore v. Att'y Gen. of Colo.*, 519 F.3d 1084, 1089 (10th Cir. 2008) ("A petition's untimeliness must either be pled by the government as an affirmative defense[] or be

clear from the face of the petition itself." (citations omitted)). Respondent filed its supplemental brief on September 12, 2024, and Hahn filed his Response on September 20, 2024. Docs. 52–53. Respondent did not file an optional Reply.

## DISCUSSION

In the Amended Motion, Petitioner raises five claims for relief:[4]

(A) officers violated his rights under the Fourth and Fifth Amendments by searching his home in December 1999 without probable cause, exceeding the scope of the warrant and concealing information related to the search warrant. He also asserts his federal trial counsel was ineffective in addressing his Fourth Amendment suppression claims;

(B) he received ineffective assistance of counsel at trial when a stipulation was entered as to the number of marijuana plants;

(C) the trial court erred in instructing the jury of its burden of proof and on the statutory definition of "marihuana;"

(D) he is actually innocent of Count 1 due to a change in law; and

(E) the Court violated the Ex Post Facto Clause in 2020 by sentencing him based on the 2018 Guidelines, which included a two-level increase for maintaining a premises for marijuana manufacturing or distribution that was not included in the 1998 Guidelines. Doc. 15 at 3.

Judge Martinez recommended finding that Claims A and C are procedurally barred, and Petitioner cannot meet any exceptions to the procedural bar. He further recommended that Claims B, D, and E fail on the merits.

---

[4] The Court will address the claims as Claims A-E as organized by Judge Martinez and addressed by Petitioner in his objection to the PFRD. *See* PFRD, Doc. 55; Objection to PFRD, Doc. 61. They differ from how Petitioner presented his claims in his Amended Motion. *See* Doc. 15.

The Court adopts these recommendations. The Court has reviewed the record *de novo* where appropriate. The Court addresses some of Petitioner's objections below, but for the most part, his objections are duplicative of his prior arguments and were already addressed in the PFRD, or his objections were otherwise waived as they were not presented to the magistrate judge for consideration in his recommendation.

Moreover, the Court concludes that Claims A-D are untimely and therefore fail.

## I.    <u>Petitioner's Claims A-D are untimely.</u>

The Court denies Claims A-D as they are untimely. Judge Martinez issued an OSC directing the parties to why certain claims should not be dismissed as untimely. *See* Doc. 51. Respondent replied, asserting that claims A-D should be dismissed as untimely. Doc. 52. Petitioner disagrees.

Four of Petitioner's claims (Claims A-D) spring from events which occurred twenty years ago, such as a suppression hearing, his trial and conviction, or the original final judgment in this case.

Generally, a § 2255 habeas petition must be filed within one year of the criminal judgment of conviction becoming final. § 2255(f)(1). The one-year limitation period can be extended where:

(1) The inmate was prevented from making a motion by "governmental action in violation of the Constitution or laws of the United States . . . ." § 2255(f)(2);

(2) The motion is based on a "right [that] has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review." § 2255(f)(3); or

(3) The inmate could not have discovered "the facts supporting the claim . . . through the exercise of due diligence." § 2255(f)(4).

A judgment is final when the Supreme Court "affirms a conviction on the merits on direct review or denies a petition for a writ of certiorari, or when the time for filing a certiorari petition expires." *Clay*, 537 U.S. at 527; *see also United States v. Willis*, 202 F.3d 1279, 1280 (10th Cir. 2000) (stating that "a judgment of conviction is final for purposes of the one-year limitation period in § 2255 when the United States Supreme Court denies a petition for writ of certiorari after a direct appeal"). The limitation period may be equitably tolled if petitioners establish that (1) they have been " 'pursuing [their] rights diligently, and (2) that some extraordinary circumstance stood in [their] way' and prevented timely filing." *Lawrence v. Fla.*, 549 U.S. 327, 336 (2007) (quoting *Pace v. DiGuglielmo*, 544 U.S. 408, 418 (2005)); *United States v. Grealish*, 559 F. App'x 786, 788 (10th Cir. 2014) (same).

Petitioner's Claims A-D – all of which challenge matters related to his trial and conviction which occurred twenty years before his amended judgment – are untimely. Judge Parker issued a judgment in the criminal case on June 7, 2001. CR Docs. 130, 133. The Tenth Circuit issued a decision affirming the judgment on April 18, 2002. CR Doc. 140. Petitioner's judgment became final on January 27, 2003, when the Supreme Court of the United States denied Mr. Hahn's petition for writ of certiorari. CR Doc. 180; *See Gonzalez v. Thaler*, 565 U.S. 134, 149, 132 S. Ct. 641, 653, 181 L. Ed. 2d 619 (2012) (noting that a conviction becomes final after the United States Supreme court denies a petition for writ of certiorari).

Petitioner filed his first § 2225 motion in January 2004. Judge Parker dismissed the motion on May 12, 2004. Petitioner filed a Rule 59(e) motion for reconsideration and a motion to amend. Judge Parker construed those as second or successive § 2255 motions. The Tenth Circuit affirmed Judge Parker's decision on August 14, 2006.

In 2019, the Fourth Circuit granted his § 2241 motion and vacated his second § 924(c) conviction (Count 4). *See Hahn v. Moseley,* 931 F.3d 295 (4th Cir. 2019). Thus, an Amended Judgment resentencing Petitioner to a lower sentence was entered on September 25, 2020. CR Doc. 251.

Petitioner did not file this § 2255 habeas action until September 8, 2021, approximately 18 years after his original judgment became final. Here, Petitioner's Claims A-D solely challenge his conviction in 2001, and do not relate to his 2020 resentencing or his amended judgment reducing his sentence. In *Prendergast v. Clements,* the Tenth Circuit held that otherwise time-barred "attacks on [an] original conviction are [not] resurrected" by a resentencing or amended judgment. 699 F.3d 1182, 1186-88 (10th Cir. 2012). Instead, courts must assess the timeliness of habeas claims on a "claim by claim basis." *Id.* Thus, the Tenth Circuit affirmed the district court's dismissal of Prendergast's claims challenging his conviction as untimely even though his claims challenging an amended sentence were timely. *Id.* Here, Claims A-D all challenge matters arising from his suppression hearing or trial and conviction in 2001, and which expired many years ago. Therefore, Petitioner's 2021 § 2255 habeas petition was filed well more than 1 year after his judgment became final. § 2255(f)(1) ("A 1-year period of limitation shall apply to a motion under this section. The limitation period shall run from the latest of…(1) the date on which the judgment of conviction becomes final.").

In his response to the OSC, Petitioner does not expressly argue that § 2255(f)(2), (3), or (4) apply to extend the time period in which he can timely file this § 2255 motion. For example, in his response to the OSC, Petitioner has not argued that there was an impediment created by governmental action in violation of the Constitution or laws of the United States which prevented him from filing his § 2255 habeas motion. *See* Doc. 53; § 2255(f)(2) (The one-year period of

limitation shall run from "the date on which the impediment to making a motion created by governmental action in violation of the Constitution or laws of the United States is removed, if the movant was prevented from making a motion by such governmental action"). Here, Petitioner has not argued that § 2255(f)(2) applies here, or demonstrated that there was a governmental action in violation of the constitution which impeded his ability to make this motion. Even assuming he argued so, he has not argued or demonstrated he filed his § 2255 habeas petition within one year of the impediment being lifted. For example, assuming Petitioner *had* argued that Respondent kept the January 2000 warrant affidavit from him, Petitioner did not state in his response to the OSC when he obtained sufficient access to the warrant or contents of the warrant to file his habeas Claim A.

Moreover, Petitioner has not asserted that his claims involve a right newly recognized by the Supreme Court and made retroactively applicable on collateral review. § 2255(f)(3). Even assuming he does argue so, he has not argued that he filed his claim within one year of the newly recognized right by the Supreme Court.

Finally, Petitioner does not argue or demonstrate in his response to the OSC that he filed his motion within one year of "the date on which the facts supporting the claim or claims presented could have been discovered through the exercise of due diligence." § 2255(f)(4). Here, Petitioner has not asserted that any of his claims are based on facts which he could not have discovered until one year before he filed his habeas petition. Petitioner does not argue in his response to the OSC that a *Brady* violation is the reason for his untimely Fourth Amendment claim. Even assuming he had, Petitioner was aware of the search warrant in a state hearing in 2000, and he presents no facts in his response to the OSC demonstrating when he became privy to the information necessary to bring his claim through the exercise of due diligence.

Rather, in response to the OSC, Petitioner asserted that his § 2255 motion is timely because

- Respondent waived its statute of limitations defense (Doc. 53 at 1-2);

- All of his claims are timely filed under § 2255(f)(1) based on a new, intervening amended judgment entered on September 25, 2020 (Doc. 53 at 2-6); and

- His claims are timely under miscarriage of justice or actual innocence principles.

*See* Doc. 53. The Court addresses and rejects these arguments below.

### A.    Respondent did not waive its timeliness argument.

The Government has not waived its timeliness argument as to Counts A-D. The Government's response states that "the only claim Hahn assert which may be construed as timely is his Ex Post Facto claim, which directly pertains to his resentencing." Doc. 52 at 6. The Government has not expressly or intentionally waived timeliness as to Counts A-D, although it does expressly waive timeliness as to Count E.

"[D]istrict courts are permitted . . . to consider, *sua sponte,* the timeliness of claims in a habeas petition when untimeliness is clear from the petition, so long as the parties [have] fair notice and an opportunity to present their positions." *Day v. McDonough*, 547 U.S. 198, 209–210 (2006) (citations omitted); *Kilgore v. Att'y Gen. of Colorado*, 519 F.3d 1084, 1089 (10th Cir. 2008) ("A petition's untimeliness must either be pled by the government as an affirmative defense[] or be clear from the face of the petition itself."). In considering whether to assess timeliness *sua sponte*, the "court must assure itself that the petitioner is not significantly prejudiced by the delayed focus on the limitation issue, and "determine whether the interests of justice would be better served by addressing the merits or by dismissing the petition as time barred." *Day*, 547 U.S. at 210 (quoting *Granberry v. Greer*, 481 U.S. 129, 136 (1987). However, a court may not *sua sponte* raise the timeliness of a petitioner's claims if the respondent has deliberately or expressly waived

it. *Day*, 547 U.S. at 202; *United States v. Morgan*, 775 F. App'x 456, 457 n.1 (10th Cir. 2019).

"To be express, a waiver of [the defense] must be clear, explicit, and unambiguous." *McCormick*

*v. Parker*, 571 F. App'x 683, 687 (10th Cir. 2014) (quoting *Sharrieff v. Cathel,* 574 F.3d 225, 229

(3rd Cir. 2009)).

Here, the Government expressly reserved its timeliness argument and did not expressly or

intentionally relinquish it. The Court initially ordered a limited answer from Respondent regarding

whether the motion was second or successive.  The Government filed a limited answer as directed

by the Court and expressly stated that it did not waive the timeliness defense.  Doc. 24 at 16.  A

PFRD acknowledged that Respondent expressly reserved its timeliness argument. Doc. 32 at 14.

Finally, Judge Martinez issued an order to show cause why the motions should not be dismissed

as untimely.  Respondent answered, asserting that "all the claims set forth in Hahn's motion, but

for his Ex Post Facto claim which directly applies to his 2020 resentencing, are untimely."  Doc.

52 at 1. Thus, the Court concludes that Respondent did not expressly or intentionally waive

timeliness.

**B.    Petitioner's 20-year-old Claims (A-D) are not timely based on an amended**
**judgment issued following his resentencing.**

Next, Petitioner argues that all five of his claims are timely filed under § 2255(f)(1) based

on a new intervening amended judgment entered September 25, 2020, pursuant to *Magwood v.*

*Patterson*, 561 U.S. 320, 341-42, 130 S.Ct. 2788, 177 L.Ed.2d 592 (2010).  The Court disagrees,

as Claims A-D do not relate to his resentencing or amended judgment, but stem from events which

occurred during his conviction twenty years earlier. Under well-established Tenth Circuit case law,

explained below, the Amended Judgment does not resurrect long-extinct claims.

*Magwood* held that where "there is a new judgment intervening between the two habeas petitions, an application challenging the resulting new judgment is not second or successive at all." *Magwood v. Patterson*, 561 U.S. 320, 341-42, 130 S.Ct. 2788, 177 L.Ed.2d 592 (2010) (citation and internal quotation marks omitted)).  *Magwood* addressed the second-or-successive bar to habeas petitions, and did not address the timeliness of a habeas petition under § 2255(f)(1). Rather, *Magwood* expressly declined to rule on whether a petitioner can challenge his underlying conviction following an amended judgment, and instead noted that "[s]everal Courts of Appeals have held that a petitioner who succeeds on a first habeas application and is resentenced may challenge only the 'portion of a judgment that arose as a result of a previous successful action.'" *Magwood v. Patterson*, 561 at 342 n.16, *quoting in part Lang v. United States,* 474 F.3d 348, 351 – 352 (6th Cir. 2007) (citing decisions); *Esposito v. United States,* 135 F.3d 111, 113–114 (2d Cir. 1997) (*per curiam*).

As explained below, several Tenth Circuit cases since then have concluded that *Magwood* does not apply to the timeliness analysis of a habeas petition.

In *Prendergast v. Clements,* the Tenth Circuit held that otherwise time-barred "attacks on [an] original conviction are [not] resurrected" by a resentencing. 699 F.3d 1182, 1186-88 (10th Cir. 2012) (holding that courts must assess the timeliness of claims on a "claim by claim basis" and affirming the district court's dismissal of Prendergast's claims challenging his conviction as untimely even though his claims challenging an amended sentence were not). Moreover, *Prendergast* established that to determine the timeliness of habeas claims, courts must analyze claim-by-claim.  *Id.*  In other words, an amended judgment does not resurrect untimely habeas claims which attack a long-stale original conviction or judgment.

Since *Prendergast*, the Tenth Circuit has applied this claim-by-claim analysis and held that an amended judgment does not resurrect untimely claims challenging the original conviction. In *Burks v. Raemisch*, the Tenth Circuit distinguished *Magwood* and relied on *Prendergast* to conclude that the petitioner's new sentence as a result of the state trial court's *sua sponte* review correcting his sentence did not renew the statute of limitations clock under 28 U.S.C. § 2244(d)(1) to permit a challenge to the undisturbed underlying conviction. 680 Fed. Appx. 686, 689-91 (10th Cir. 2017); *Carrillo v. Zupan,* 626 Fed. Appx. 780, 781-82 (10th Cir. 2015) (holding that the petitioner's habeas petition was untimely because it challenged his conviction rather than his corrected sentence and noting that the *Magwood* Court declined to address the question presently before the court); s*ee Vallez v. Hartley*, 305 Fed.Appx. 505, 508 (10th Cir. 2008) (unpublished) ("We are aware of no authority suggesting that resentencing can restart the limitations period when the prisoner seeks to bring only claims challenging his original conviction...."); *see also Davis v. Bridges*, No. 22-6107, 2024 WL 140026, at *6 (10th Cir. Jan. 12, 2024) (untimely attack on state court's jurisdiction were not rendered timely by later state court decision declining to reduce sentence).[5] Here, Petitioner's Claims A-D challenge his original conviction, which as explained above, became final approximately 20 years ago. Claims A-D do not challenge issues arising from his resentencing or the amended judgment which reduced his sentence. Rather, Petitioner's Claims A-D are wholly unrelated to his corrected sentence or resentencing. These claims challenge suppression or trial issues which occurred before the 2001 original criminal conviction. *Carrillo v. Zupan*, 626 F. App'x 780, 782 (10th Cir. 2015) (finding petition untimely and noting that the petitioner's habeas claims were wholly unrelated to the new sentence).

---

[5] Although these cases generally address § 2254 habeas claims and analyze the limitations period under § 2244(d)(1), such language is substantially similar to the language at issue here under § 2255(f).

Moreover, to the extent relevant, Petitioner's resentencing did not result in a harsher sentence. Rather, one count was vacated and his sentence was reduced from 480 months' imprisonment to 120 months' imprisonment. *See Burks v. Raemisch*, 680 F. App'x 686, 691 (10th Cir. 2017) (noting that a resentencing resulting in a more favorable sentence does not restart limitations clock for expired claims).

In sum, binding Tenth Circuit precedent holds that the Court must analyze claim-by-claim whether a habeas claim is timely when an amended judgment is issued. Here, the limitations period on Claims A-D expired approximately twenty years ago, and these claims do not stem from or relate to the amended judgment issued in 2020.   Therefore, the amended judgment does not resurrect these long-extinct claims.

### C.    Miscarriage of justice and actual innocence theories do not make Claims A-D timely.

Petitioner argues that his claims are timely based on miscarriage of justice and actual innocence principles, a form of equitable tolling. *See, e.g., DeLalio v. Wyoming,* 363 F. App'x 626, 628 (10th Cir. 2010) (analyzing actual innocence as equitable tolling); *Laurson v. Leyba*, 507 F.3d 1230, 1232-33 (10th Cir. 2007) (same).  Equitable tolling is "a rare remedy to be applied in unusual circumstances." *Al-Yousif v. Trani*, 779 F.3d 1173, 1179 (10th Cir. 2015). To invoke equitable tolling, a habeas petitioner must "show[ ] (1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way and prevented timely filing." *Holland v. Florida*, 560 U.S. 631, 649, 130 S.Ct. 2549, 177 L.Ed.2d 130 (2010) (citation and internal quotation marks omitted). "An inmate bears a strong burden to show specific facts to support his claim of extraordinary circumstances…" *Yang v. Archuleta*, 525 F.3d 925, 928 (10th Cir. 2008) (alteration and citation omitted). However, a petitioner generally need not show due

diligence when asserting an actual innocence claim. *Lopez v. Trani*, 628 F.3d 1228, 1230-31 (10th Cir. 2010).

Petitioner cited to *Pacheco v. Habti*, 62 F.4th 1233, 1241 (10th Cir.), *cert. denied,* 143 S. Ct. 2672, 216 L. Ed. 2d 1245 (2023). That case sets forth the actual innocence or miscarriage of justice standard as follows:

> "[T]he petitioner's claim of actual innocence does not serve as the basis for granting habeas relief. Instead, the claim of actual innocence is joined with a procedurally defaulted claim to serve as a gateway through which a habeas petitioner must pass to have his otherwise barred constitutional claim considered on the merits." *Taylor v. Powell*, 7 F.4th 920, 926 (10th Cir. 2021) (footnote and internal quotation marks omitted); *see McQuiggin v. Perkins*, 569 U.S. 383, 386, 133 S.Ct. 1924, 185 L.Ed.2d 1019 (2013) ("[A]ctual innocence, if proved, serves as a gateway through which a petitioner may pass whether the impediment is a procedural bar ... or ... expiration of the statute of limitations."). Also known as the "miscarriage of justice" exception, the actual-innocence exception applies "when a petitioner can demonstrate that he is actually innocent of the crime of conviction." *Taylor*, 7 F.4th at 926. To qualify for the exception, "the petitioner must show that it is more likely than not that no reasonable juror would have convicted him in the light of the new evidence." *Schlup v. Delo*, 513 U.S. 298, 327, 115 S.Ct. 851, 130 L.Ed.2d 808 (1995). "It is important to note in this regard that 'actual innocence' means factual innocence, not mere legal insufficiency." *Bousley v. United States*, 523 U.S. 614, 623, 118 S.Ct. 1604, 140 L.Ed.2d 828 (1998).

*Id.* The actual innocence exception to timeliness is based on factual innocence, and is not based on legal insufficiency, such as instructional error, the involuntariness of a plea, or illegal search and seizure. *Pacheco v. Habti*, 62 F.4th at 1243 (10th Cir.). Thus, Petitioner's legal challenges, such as instructional error (Claim C) or illegal suppression of evidence (Claim A), do not establish factual innocence. Therefore, the actual innocence analysis does not apply at all to Claims A and C and those claims are untimely.

Petitioner's response summarily addresses actual innocence and does not establish extraordinary circumstances, or that he was factually innocent. Doc. 53 at 6. Although Petitioner is *pro se,* the Court cannot act as his advocate, formulate arguments on his behalf, or carry his

burden for him. *Garrett v. Selby Connor Maddux & Janer,* 425 F.3d 836, 840 (10th Cir. 2005) ("the court cannot take on the responsibility of serving as the litigant's attorney in constructing arguments and searching the record."), *citing Hall v. Bellmon,* 935 F.2d 1106, 1110 (10th Cir. 1991)("[W]e do not believe it is the proper function of the district court to assume the role of advocate for the pro se litigant."). Here, the Court concludes that Petitioner has not carried his burden in his response to the OSC to establish that he is actually innocent sufficient to toll the limitations period. Doc. 53 at 6.

Alternatively, even assuming he had sufficiently presented his actual innocence tolling argument, it fails, as explained below.

Under Claim D, Petitioner asserts he is actually innocent due to a change in the law. The Agriculture Improvement Act of 2018 (the "AIA") amended the Controlled Substance Act to differentiate between hemp and marijuana. *See* Pub. L. No. 115-334, § 12619, 132 Stat. 4490, 5018; 21 U.S.C. § 802(16)(A), (B)(i). "[T]he [AIA] simply excluded hemp from its definition of a controlled substance, it did not repeal penalties for marijuana convictions. What it did do is decriminalize hemp." *United States v. Williams,* 61 F.4th 799, 802, 809 (10th Cir. 2023).

Given the change in the law, Petitioner asserts that the evidence presented at trial was insufficient to demonstrate he possessed marijuana plants instead of hemp plants. But as explained in the PFRD and below, the AIA is not retroactive, and it did not eliminate criminal penalties for marijuana. *United States v. Brown*, 47 F.4th 147, 152 (3d Cir. 2022) (AIA did not apply retroactively), *aff'd,* 602 U.S. 101, 144 S. Ct. 1195, 218 L. Ed. 2d 583 (2024). Under the general federal saving statute, the repeal of a criminal law presumptively "shall not have the effect to release or extinguish any penalty, forfeiture, or liability incurred under such statute" before the repeal. 1 U.S.C. § 109. The saving statute applies to amendments of criminal laws, such as the

AIA. *See United States v. Bell*, 624 F.3d 803, 814 (7th Cir. 2010). Crucially, "penalties are 'incurred' under the older statute when an offender becomes subject to them, *i.e.*, commits the underlying conduct that makes the offender liable," not when a court enters a judgment of conviction. *Dorsey v. United States*, 567 U.S. 260, 272 (2012).

Congress can override the saving statute by making the repeal or amendment of a criminal law retroactive, "either expressly or by implication." *Dorsey*, 567 U.S. at 274. As explained above, there is nothing in the AIA to suggest it was made retroactive.

Even assuming the AIA were retroactive, the circumstantial evidence at trial was sufficient for a reasonable jury to conclude he was growing marijuana plants, and not hemp. Petitioner points to nothing in the record to suggest the plants were hemp plants. "To invoke the actual-innocence exception to the one-year filing deadline, [Petitioner] must show … that 'it is more likely than not that no reasonable juror would have convicted him.'" *United States v. Caldwell*, No. 21-4026, 2021 WL 4911064, at *2 (10th Cir. Oct. 21, 2021), *quoting in part McQuiggin v. Perkins*, 569 U.S. 383, 399 (2013). Petitioner has not demonstrated that it is more likely than not that no reasonable juror would have convicted him.  Petitioner has not pointed to anything in the trial record (or to any new evidence) to suggest he actually possessed hemp and not marijuana, and the circumstantial evidence was sufficient for a reasonable to jury to conclude he possessed marijuana plants.

In the Tenth Circuit, direct evidence of a substance's chemical composition is not necessary.  Where the Government has not presented evidence of the chemical composition of a substance, the Government may still provide through circumstantial evidence, such as:

> evidence of the physical appearance of the substance ..., evidence that the substance produced the expected effects when sampled by someone familiar with the illicit drug, testimony that a high price was paid in cash for the substance, evidence that transactions involving the substance were carried on with secrecy or deviousness,

and evidence that the substance was called by the name of the illegal narcotic by the defendant or others in [her] presence.

*Fancher v. Jordan*, 166 F.3d 1220 (10th Cir. 1999), *quoting United States v. Baggett,* 890 F.2d 1095, 1096 (10th Cir.1989). For example, in *Rembert,* the Defendant made a similar argument under the AIA, asserting that the Government failed to produce testing evidence with the THC concentration demonstrating that the substance was in fact marijuana and not hemp. *United States v. Rembert*, 807 F. App'x 953, 956 (11th Cir. 2020). The Eleventh Circuit rejected that argument, stating that circumstantial evidence was sufficient to demonstrate the substance was marijuana without lab testing. *Id.*; *See also United States v. Sanapaw*, 366 F.3d 492, 496 (7th Cir. 2004) (internal quotation marks omitted) (considering circumstantial evidence such as "on-the-scene remarks by a conspirator identifying the substance as a drug; lay-experience based on familiarity through prior use, trading, or law enforcement; and behavior characteristic of drug sales.").

The evidence presented at trial was overwhelming that the plants were marijuana plants producing smokeable material. Given that Petitioner does not engage with the evidence *at all*, the Court will not recite all of it. However, the Court notes as follows.

Petitioner asserts there was no laboratory evidence differentiating between hemp and marijuana, or establishing the THC concentration of the seized plants. But there was testimony regarding laboratory tests of the 117 marijuana plants, which confirmed they were marijuana plants. Petitioner stipulated that an expert accurately tested the plants to be marijuana, although the stipulation did not state the THC concentration. *See* Tr. Trans., CR Doc. 182 at 133-135.[6]

---

[6] In citations to the criminal trial transcript, the Court cites to the page numbers generated by CM/ECF.

However, dried marijuana was seized from the same building where Petitioner was growing the 117 marijuana plants and it was also tested. Specifically, a witness testified that marijuana was seized from a drying room in the same grow house where the 117 plants were seized. The expert testified that it was high grade cultivated sinsemilla, which is a female marijuana plant that has not recently seeded and is preferable because it has "such a high concentration of THC." CR Doc. 182 at 136. This is highly probative circumstantial evidence regarding that the 117 plants were marijuana plants.

On cross-examination, a witness agreed that the plants were "high grade marijuana." CR Doc. 182 at 143. The plants had buds, which contained a "high-grade level of marijuana." *Id.* at 32. Moreover, a witness stated that the marijuana plants were "high grade sinsemilla plants…engineered so that they produce more bud, larger buds, so that's why it's my estimation that the plants are solely to, to draw smokeable plant material at the best quality for the highest price the dealer would receive." *Id.* at 147-48. Thus, the plants were the same high-grade, high THC concentration plants as the seized, dried marijuana. Moreover, the witness testified that the plants were marijuana plants designed to produce smokeable plant material. *Id.*

Petitioner also stated that he grew the marijuana in the grow house to smoke it. CR Doc. 182 at 161. He also asserted that he grew the marijuana to treat his stress disorder. *Id.*

A witness testified regarding the value of the 117 plants on the street, stating that the yield of the 117 marijuana plants, sold on the street, would have been $115,830. *Id.* at 138. Marijuana was purchased from Petitioner for $350 an ounce. *Id.* at 148.

Moreover, there was evidence presented that Petitioner possessed firearms and ammunition, and that Petitioner was engaged in trafficking marijuana, i.e., selling it. *See, e.g.,* Tr.

Trans., CR Doc. 181 at 90-101 (discussing numerous firearms and ammunition found); CR Doc. 182 at 148 (discussing Petitioner selling marijuana by the ounce).

Cash was also found in the grow house. CR Doc. 181 at 103. A ledger indicating the ounces of marijuana grown and dollar amounts were also found in the house, which is indicative of drug trafficking. CR Doc. 181 at 124. He possessed a digital scale, used to measure quantities of controlled substances for distribution.  CR Doc. 182 at 128.

Thus, this overwhelming circumstantial evidence was more than sufficient for a reasonable jury to conclude that the 117 plants were marijuana plants. Petitioner bears the burden to show factual innocence, but he pointed to nothing in the trial record, or any new evidence, to suggest that the plants might be hemp. Petitioner has failed to show he is actually innocent under Claim D, and therefore Claim D is denied as untimely.

As to Claim B, Petitioner asserts that the Government failed to establish an element of the controlled substances conviction. "[A]s a general rule a claim of actual innocence can be based on the failure to establish an element of the offense on which the defendant was prosecuted." *Pacheco*, 62 F.4th at 1244. Petitioner asserts that the Government did not produce sufficient evidence to establish the possession of more than 100 marijuana plants. The Court disagrees. As explained in the PFRD, Petitioner not only *signed* a stipulation that Petitioner possessed 117 marijuana plants, but the government presented evidence that a reasonable jury could find that Petitioner possessed 117 marijuana plants.  Tr. Trans., CR Doc. 182 at 135 (reading the stipulation and noting Petitioner's signature); PFRD, Doc. 55 at 20. A witness testified that there were 117 marijuana plants seized from Petitioner's residence and the government performed testing on those 117 marijuana plants. Doc. 55 at 21. Therefore, as explained in the PFRD and below, Petitioner has not established factual innocence as to Claim B.  Claim B is therefore untimely.

II.     **Alternatively, the Court adopts the PFRD.**

Alternatively, assuming the claims were timely, the Court overrules the objection to the PFRD and adopts Judge Martinez's recommendation that Claims A and C are procedurally barred and Claims B, D, and E fail on the merits.

Under 28 U.S.C. § 636(b)(1)(C), the Court conducts a de novo review of any objections to the Magistrate Judge's PFRD. To resolve an objection to the PFRD, the Court "must determine de novo any part of the magistrate judge's disposition that has been properly objected to. The district judge may accept, reject, or modify the recommended disposition; receive further evidence; or return the matter to the magistrate judge with instructions." Fed. R. Civ. P. 72(b)(3). "[A] party's objections to the magistrate judge's report and recommendation must be both timely and specific to preserve an issue for de novo review by the district court or for appellate review." *United States v. One Parcel of Real Property*, 73 F.3d 1057, 1060 (10th Cir. 1996). "The filing of objections to a magistrate's report enables the district judge to focus attention on those issues—factual and legal—that are at the heart of the parties' dispute." *Id.* at 1059 (quoting *Thomas v. Arn*, 474 U.S. 140, 147 (1985)). Issues raised for the first time in an objection to the PFRD are deemed waived. *Marshall v. Chater*, 75 F.3d 1421, 1426 (10th Cir. 1996). Here, as explained below, Petitioner either has not presented meritorious objections, or he waived his objections by raising issues for the first time in his objection to the PFRD (Doc. 61). Therefore, the Court overrules the objections.

**A.  Claim A:  Review of Petitioner's Fourth Amendment Claim is barred under *Stone* because he had a full and fair opportunity to litigate this claim before trial, and he does not show that ineffective assistance of counsel or a *Brady* violation affected his full and fair opportunity to litigate his claim.**

As to Claim A, Petitioner alleged that his Fourth and Fifth Amendment rights were violated when his home was searched in December 1999. Although he was afforded a suppression hearing challenging the December 1999 warrant, he asserts that he did not have a full and fair opportunity to litigate this claim before trial as (1) a state court kept a separate January 2000 warrant affidavit under seal, and (2) trial counsel was ineffective.

A petitioner may not obtain relief on habeas review "on the ground that evidence obtained in an unconstitutional search or seizure was introduced at his trial" if the petitioner was afforded "an opportunity for full and fair litigation of a Fourth Amendment claim . . . ." *Stone v. Powell*, 428 U.S. 465, 494 (1976). "An 'opportunity for full and fair litigation' includes, but is not limited to, the procedural opportunity to raise or otherwise present a Fourth Amendment claim." *Gamble v. Oklahoma*, 583 F.2d 1161, 1165 (10th Cir. 1978).

The PFRD found that review of Hahn's Fourth Amendment Claim was barred under *Stone* because Hahn had a full and fair opportunity to litigate this claim before trial, and Hahn did not show that a *Brady* violation or ineffective assistance of counsel affected his full and fair opportunity to litigate his claim.

Upon *de novo* review, the Court agrees with Judge Martinez. His analysis is adopted in full and incorporated herein, and Petitioner's objections are overruled.

The Court briefly addresses new arguments raised in his objection. For the first time in his objection to the PFRD, he asserts appellate counsel was ineffective. Doc. 61 at 7. This was not raised in his Amended Motion (Doc. 15), and therefore this argument is waived. *See United States v. Garfinkle*, 261 F.3d 1030, 1031 (10th Cir. 2001) (stating that "theories raised for the first time in objections to the magistrate judge's report are deemed waived.") (citation omitted). In his Amended Motion he summarily raised ineffective assistance of appellate counsel, but he did not

explain or demonstrate how appellate counsel was ineffective.  Doc. 15 at 17.  Petitioner simply contended that counsel raised one issue on appeal which was a "dead bang loser." *Id.* He did not elaborate any further on ineffectiveness of appellate counsel. Instead, he focused on trial counsel's errors. Thus, Petitioner did not develop the issue, and the issue is therefore waived.

Finally, to the extent that Hahn now raises a cumulative error claim with regard to his ineffective assistance of counsel claim, he never raised the issue before. Thus, this contention would be waived as well. *See Miller v. Allbaugh*, 798 F. App'x 224, 233–34 (10th Cir. 2020) (finding that when petitioner did not raise a cumulative-error claim in his habeas petition, his claim was waived on appeal).

In sum, Petitioner has not shown that the United States concealed evidence nor that his defense counsel's performance was deficient. Consequently, he fails to demonstrate that his litigation opportunity was hindered. *Stone* therefore bars review of Hahn's claim that his Fourth Amendment rights were violated because he had a full and fair opportunity to litigate the issues before trial. Claim A is procedurally barred and therefore denied.

**B.    Claim B: Petitioner has not shown defense counsel were ineffective.**

In Claim B, Petitioner argues that defense counsel were ineffective because they failed to investigate the number of marijuana plants he was growing and, consequently, erred by stipulating that he was growing 100 or more plants. Doc. 15 at 4–7. He maintains that he was prejudiced by the stipulation because (1) had counsel shown he had fewer than 100 plants, he would not have been sentenced to the 60-month mandatory minimum sentence for Count 1, and (2) because he did not agree to the stipulation, he was deprived of his chosen defense and his autonomy. *Id.* at 6–7.

The PFRD found that Hahn failed to show that defense counsel were ineffective both because he failed to show that his counsel's performance fell below the standard of objective reasonableness, and because he could not demonstrate prejudice.

To show ineffective assistance of counsel, Petitioner must show that his counsel's decision to stipulate to the number of marijuana plants "fell below an objective standard of reasonableness" and that there is a reasonably probability that, without the stipulation, the outcome of the trial would have been different. *Strickland*, 466 U.S. at 687–88. The Court starts with the presumption that "an attorney's conduct is objectively reasonable because it could be considered part of a legitimate trial strategy." *Bullock v. Carver*, 297 F.3d 1036, 1047 (10th Cir. 2002) (citation omitted). As noted above, neither "mere speculation" nor "a conceivable effect on the outcome" is sufficient to satisfy the movant's burden. *Byrd*, 645 F.3d at 1173; *Turrentine*, 390 F.3d at 1205 (same); *Strickland*, 466 U.S. at 693 (same).

Judge Martinez analyzed the *Strickland* test as follows. *See* PFRD, Doc. 55 at 20-21. Because the Court adopts his PFRD, the Court incorporates his analysis as follows. First, he found that Petitioner cannot show that his counsel's performance fell below an objective standard of reasonableness. "In the absence of an allegation that the stipulation was false and involuntary, [a defendant] does not allege an adequate predicate for an ineffective counsel claim." *United States v. Mejia-Alarcon*, 995 F.2d 982, 992 (10th Cir. 1993). "Hahn does not contend that the stipulation was involuntary and false; instead, he conclusorily states that he did not agree to the stipulation and was deprived of his chosen defense. Specifically, he asserts that he wanted to litigate the plant count to demonstrate that he had 98 plants under cultivation and two dozen fresh cut clones that had not yet formed roots." PFRD, Doc. 55 at 20-21, *citing* Doc. 15 at 6. "Yet Petitioner's contention that he wanted to litigate the plant count is contradicted by the record because it

repeatedly reflects Hahn's intended trial strategy to admit the marijuana offenses and litigate the firearm charges. Hahn signed a written stipulation acknowledging 117 marijuana plants were seized from his residence, that those plants were in fact marijuana, and that an expert in the field of chemistry and controlled substances accurately tested the plants to be marijuana. Hahn was present at trial when the trial judge read the stipulation to the jury and informed the jury that Hahn had signed the stipulation." *Id.*, *citing* CR Doc. 182 at 133–35. "Hahn did not object to this stipulation." *Id.*, *citing Mejia-Alarcon*, 995 F.2d at 991–92 (noting that the defendant did not object to the stipulation and that the defendant did not allege that the stipulation was involuntary and thus could not "allege an adequate predicate for an ineffective counsel claim"). "Critically, Hahn even testified at trial admitting that he was growing marijuana and testified that what the government said about him growing marijuana was true." PFRD, Doc. 55 at 20-21, *citing* CR Doc. 182 at 296. "Thus, Hahn cannot make a threshold showing that the stipulation was false and not voluntary, and Hahn also cannot show that his counsel's performance fell below objective reasonableness." *Id.*

Next, Judge Martinez found that even if Petitioner could demonstrate that his counsel's performance was not objectively reasonable, Petitioner has not demonstrated that the stipulation to the plant count was prejudicial. *See United States v. Foreman*, No. 02-cr-135 TCK, 2008 WL 4415335, at *4 (N.D. Okla., Sept. 23, 2008) (stating that the defendant "fails to meet the prejudice prong of *Strickland* by failing to show that, but for the stipulation, 'the outcome of the proceeding likely would have changed'") (quoting *Miller v. Champion*, 161 F.3d 1249, 1256–57 (10th Cir. 1998)). Judge Martinez reasoned as follows:

> Here, the Government presented evidence at trial regarding the number of marijuana plants. Specifically, a witness testified that there were 117 marijuana plants seized from Hahn's residence and that the government performed testing samples on those 117 marijuana plants. (CR Doc. 182 at 35–36, 133.) In addition, evidence was presented as to the many

marijuana grow rooms, high intensity grow lights/lamps, and high electrical bills. (CR Doc. 182 at 32–40.) Another witness testified that two or three individuals helped with the grow operation. (*Id.* at 74–75.) Finally, as noted above, Hahn testified at trial that he was growing marijuana, and he testified that what the government said about him growing marijuana was true. (CR Doc. 182 at 296.) Thus, there was evidence at trial, in addition to the stipulation, that Hahn had more than 100 plants. Accordingly, Hahn cannot demonstrate prejudice even if counsel's conduct was objectively unreasonable.

PFRD, Doc. 55 at 21. The Court agrees and incorporates this analysis herein.

In his objection to the PFRD (Doc. 61), Petitioner asserts that Judge Martinez should have analyzed his claim under *McCoy*. Petitioner asserts that Judge Martínez should have considered whether counsel's stipulation to plant count in contravention of Hahn's stated defense objective was a violation of his secured autonomy right and thus structural error under *McCoy v. Louisiana*, 584 U.S. 414 (2018). The Court finds that this argument is waived as it was not sufficiently developed in his Amended Petition, and was instead combined or incorporated into his *Strickland* analysis. Doc. 15 at 5-7. In *McCoy*, the Supreme Court stated that "[b]ecause a client's autonomy, not counsel's competence, is in issue, we do not apply our ineffective-assistance-of-counsel jurisprudence [in *Strickland*]. *McCoy*, 584 U.S. at 426. Instead, the Supreme Court noted that a client's autonomy is a structural error and should be analyzed differently. *Id.* Here, Petitioner asserted a *Strickland* claim in his Amended Motion (Doc. 15), and he cannot now assert that Judge Martinez erred by failing to analyze a separate *McCoy* claim. Therefore, the Court concludes the *McCoy* claim is waived as it was only developed in his objection to the PFRD.

Alternatively, only assuming the *McCoy* argument is not waived, the Court finds it is not well-taken. In *McCoy*, "the defendant vociferously insisted that he did not engage in the charged acts and adamantly objected to any admission of guilt." *McCoy*, 585 U.S. at 417. Despite the defendant's repeated insistence to both his counsel and the trial court that he was innocent, and despite the defendant's testimony at trial under oath that he was innocent, the defendant's counsel informed the jury multiple times that the defendant committed the crimes. *Id.* at 418–20. The

Supreme Court ruled that it was unconstitutional for defense counsel to concede the defendant's guilt over the defendant's unambiguous objection. *Id.* at 420, 428.

*McCoy* is not on point here.  The facts at trial do not demonstrate that Petitioner disagreed with the stipulation or insisted on litigating the number of marijuana plants.  Instead, Petitioner *signed* a trial stipulation which stated he had 117 marijuana plants, was present at trial when the judge read the stipulation, and never made any objection on the record to the stipulation. CR Doc. 182 at 133–35.  The Government submitted evidence regarding the number of plants.  Moreover, at trial Petitioner *testified* that he was growing marijuana and that what the government said about him growing marijuana was true. CR Doc. 182 at 161-162.  In sum, these facts are nothing like *McCoy*.

Therefore, Petitioner cannot establish an ineffective assistance of counsel claim under either prong of *Strickland*, and cannot satisfy the *McCoy* standard.

## C.     Claim C: Review of Petitioner's instructional error claim is procedurally barred.

In Claim C, Petitioner argues the trial court erred in instructing the jury on the burden of proof and on the statutory definition of "marihuana." Doc. 15 at 3, 25–26. Judge Martinez found that Petitioner did not assert this argument on direct appeal, and it is therefore procedurally barred unless he shows cause for not raising that argument and actual prejudice arising from that failure. In his briefing before the magistrate judge, Petitioner put forth no arguments on either front as to this claim, so he has not met his burden. This claim is procedurally barred from review on Petitioner's § 2255 Motion. *See Cox*, 83 F.3d at 341.

Judge Martinez noted as follows. With the exception of ineffective assistance of counsel claims, "[w]hen a defendant fails to raise an issue on direct appeal, he is barred from raising the

issue in a § 2255 proceeding, unless he establishes either cause excusing the procedural default and prejudice resulting from the error or a fundamental miscarriage of justice if the claim is not considered." *United States v. Cox*, 83 F.3d 336, 341 (10th Cir. 1996) (citation omitted); *Massaro v. United States*, 538 U.S. 500, 509 (2003) (stating that "failure to raise an ineffective-assistance-of-counsel claim on direct appeal does not bar the claim from being brought in a later, appropriate proceeding under § 2255"). "To establish 'cause' requires a defendant to show some external objective factor—such as governmental interference, unavailability of the relevant factual or legal basis, or ineffective assistance of counsel—prevented him from raising the issue on direct appeal." *United States v. Torres-Laranega*, 473 F. App'x 839, 842 (10th Cir. 2012) (citing *Murray v. Carrier*, 477 U.S. 478, 488 (1986)) (subsequent citation omitted). To show prejudice, a defendant must show the error was of "constitutional dimension[] that worked to his actual and substantial disadvantage." *United States v. Snyder*, 871 F.3d 1122, 1128 (10th Cir. 2017) (quotation marks and citation omitted). Petitioners may also overcome procedural bars by showing the alleged errors have "probably resulted in the conviction of one who is actually innocent." *Bousley v. United States*, 523 U.S. 614, 623 (1998) (quoting *Murray*, 477 U.S. at 496); *see also United States v. Barajas-Diaz*, 313 F.3d 1242, 1248 (10th Cir. 2002) (same). To prevail on an "actual innocence" claim, a petitioner "must show that "in light of all the evidence, it is more likely than not that no reasonable juror would have convicted him." *Barajas-Diaz*, 313 F.3d at 1248 (quoting *United States v. Powell*, 159 F.3d 500, 502 (10th Cir. 1998)).

Here, as explained in the PFRD, Petitioner has not established cause for failing to raise this issue on direct appeal. *See* Petitioner's Objection, Doc. 61 at 33-34. He has also not shown that he is actually innocent. In his Amended Motion, he did not present argument on either issue. *See*

PFRD, Doc. 55 at 22.  Therefore, the Court concludes that Petitioner's instructional error claim (Claim C) is procedurally barred. The Court overrules the objection and adopts the PFRD.

**D.      Claim D: The Agriculture Improvement Act does not apply retroactively.**

Petitioner asserts he is not guilty of Count 1 because Congress changed the definition of "marijuana" in the Agriculture Improvement Act of 2018 (the AIA), which amended the Controlled Substances Act (the CSA) to differentiate between hemp and marijuana. (Doc. 15 at 25.) *See* Pub. L. No. 115-334, § 12619, 132 Stat. 4490, 5018; 21 U.S.C. § 802(16)(A), (B)(i); *see also United States v. Williams*, 61 F.4th 799, 802 (10th Cir. 2023), *cert. denied*, No. 22-7736, 2024 WL 2805744 (U.S. June 3, 2024); *United States v. Johnson*, No. CR 18-0220 JB, 2021 WL 53338, at *23 (D.N.M. Jan. 6, 2021). He argues that his "conviction constitutes a miscarriage of justice . . . because [he] is actually innocent of a [CSA] offense" under the new definitions in the CSA. Doc. 15 at 26.

Judge Martinez recommended that the Court deny this claim. Petitioner objects, asserting that the record shows that the government failed to prove that the plants it seized from his residence were a controlled substance.  Doc. 61 at 34-35.  Petitioner's objection is limited to his conviction, and did not address sentencing.  *Id.*  As explained in the PFRD and above, Petitioner's claim is not well-taken. The AIA is not retroactive, and alternatively he did not show that he was factually innocent, i.e., that he grew hemp instead of marijuana.  Rather, as detailed extensively above in the timeliness section, the overwhelming evidence at trial showed that Petitioner was growing marijuana.

Thus, Petitioner's claim that he is not guilty of Count I because Congress changed the definition of marijuana fails.  The Court overrules the objection and adopts in full the PFRD's recommendation to deny Claim D.

### E.    Claim E: The 2020 sentence did not violate the Ex Post Facto Clause.

Finally, Petitioner contends that the Court violated the Ex Post Facto Clause in 2020 by utilizing the 2018 United States Sentencing Guidelines (U.S.S.G.) Manual and not giving him the benefit of "Amendment 782," which became effective between his initial sentencing in 2001 and the 2020 resentencing. Doc. 15 at 24. As explained in detail in the PFRD, Petitioner's actual innocence or ex post facto claim is meritless.  The Court overrules the objection to the PFRD and adopts the PFRD.

Notably, Petitioner made no specific objections to Judge Martinez's findings as to his e*x post facto* claim, or explained how Judge Martinez's reasoning was incorrect.  *See* Doc. 61 at 36-37. Rather, he repeats general argument from his Amended Motion. On this basis alone, his objection is overruled.

Petitioner did not raise his sentencing guideline claim on a direct appeal.  As explained in the PFRD, there was no *ex post facto* claim as to his offense level, as his offense level was not increased. *See* PFRD, Doc. 55 at 24-26.

Petitioner also asserts that the Court erred in recalculating his criminal history score. Judge Martinez noted that "Hahn does not cite any authority showing that the Court erred in its calculation of the criminal history category. Nor does Hahn dispute that the Court, on his request, considered his sentence package anew after Count 4 was vacated. Thus, it was proper for the Court to consider the entire record… [h]ere, Hahn fails to develop his argument or cite to authority supporting his contentions. Accordingly, Hahn does not establish an ex post facto clause violation."  PFRD, Doc. 55 at 26. The Court agrees and adopts the PFRD as to Claim E. Petitioner's Amended Motion did not explain how the criminal history calculation was erroneous.  Moreover, the § 2241 habeas court directed this district court to exercise its discretion and resentence

Petitioner *de novo* under the "sentencing package" doctrine.  CR Doc. 201 at 1.  This *de novo* resentencing was at Petitioner's request.  Doc. 45 at 27.

To the extent Petitioner asserts that the sentencing court erred by considering his 24-year-old misdemeanor offense in calculating his criminal history, this was raised for the first time in objection to the PFRD, and is therefore waived. Alternatively, only assuming it is not waived, his argument is incorrect as the time period for considering prior criminal history is calculated from the "commencement of the instant offense."  USSG §4A1.2(e)(2) (2018).  This is the same as the 1998 sentencing guidelines. USSG 4A1.2(e) (1998); Doc. 64 at 22.  Under either sentencing guidelines, the misdemeanor would have been considered in calculating his criminal history.

Petitioner's objection to the PFRD is overruled and the PFRD is adopted as to Claim E.

**III.    Motion to Expand Record.**

Petitioner filed a motion to expand the record after the PFRD was filed.  Doc. 60. A previous motion to expand the record was already granted by Judge Martinez.  The Court denies the motion and declines to consider the new evidence. Plaintiff failed to demonstrate why the Court should consider evidence which could have been, but was not, presented to the magistrate judge before the PFRD was issued.

Petitioner seeks to expand the record to include seven additional documents: (1) a sworn declaration from Petitioner, prepared on December 29, 2024; (2) a sworn declaration from Hahn, prepared on July 19, 2007; (3) a copy of the Order sealing the narrative portion of the January 22, 2000 search warrant;  (4) a declaration from attorney Kari Converse; (5) a copy of a Department of the Treasury United States Custom Service report in 2000; and (6)—(7) copies of FBI reports obtained in March 2024 relating to investigation into Hahn in 2000. Doc. 60.

Rule 7 of the Rules Governing § 2255 Proceedings allows the Court to expand the record to include "letters predating the filing of the motion, documents, exhibits, and answers under oath to written interrogatories propounded by the judge" and affidavits. Here, Petitioner already had the chance to expand the record.  He filed a motion to expand the record, which was granted by Judge Martinez and considered in the PFRD.

Now, Petitioner seeks to expand the record again *after* the PFRD was issued. When reviewing an objection to the magistrate judge's recommendation, "[t]he [district court] judge *may* ... receive further evidence or recommit the matter to the magistrate judge with instructions." 28 U.S.C. § 636(b)(1) (emphasis added). "The decision whether to accept further evidence after the magistrate judge's recommendation is therefore within the district court judge's discretion." *Gonzales v. Qwest Commc'ns Corp.*, 160 F. App'x 688, 690 (10th Cir. 2005); *Cleveland v. Havanek*, 530 F. App'x 840, 842 (10th Cir. 2013) (applying *Gonzales* in § 2254 context).

Here, Petitioner does not explain why he did not provide the seven categories of documents before Judge Martinez issued his PFRD. Moreover, he does not establish that he exercised due diligence in submitting these documents into the record. He has not argued or made a sufficient showing that the additional material could not have been discovered, with due diligence, and presented to the magistrate judge before the PFRD was issued. Therefore, the Court concludes that Petitioner has not established that the Court should consider his additional records produced more than a month after the PFRD was issued.

Moreover, his Motion to Expand the record (Doc. 60) fails to demonstrate that any of the requested documents would change the result of the claims. Therefore, the Court denies the motion to expand the record.

**IV.    <u>Court declines to hold an evidentiary hearing</u>.**

An evidentiary hearing on a § 2255 motion must be held "[u]nless the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief." 28 U.S.C. § 2255(b). An evidentiary hearing is not necessary when a § 2255 motion contains factual allegations that are contradicted by the record or are conclusory. *United States v. Gallegos*, 459 F. App'x 714, 716–17 (10th Cir. 2012). Judge Martinez recommended that an evidentiary hearing is unnecessary. The Court agrees and denies Petitioner's request for an evidentiary hearing.

## CONCLUSION

For the reasons stated above, the Court overrules the objections to the PFRD and adopts the PFRD.  The Court dismisses Petitioner's Claims A-D as untimely. Alternatively, Claims A-E are denied either as procedurally barred or on the merits.  Petitioner's arguments regarding his motion to suppress evidence based on the Fourth Amendment (Claim A) are procedurally barred under *Stone*. In addition, he has not shown ineffective assistance of counsel at trial regarding the stipulation to the number of marijuana plants (Claim B). Petitioner's claim of instructional error (Claim C) is procedurally barred. Petitioner's claim that he is actually innocent based on the Agriculture Improvement Act (Claim D) is meritless because the Act does not apply retroactively. Finally, Petitioner's claim (Claim E) that the Court sentenced him in 2020 in violation of the Ex Post Facto Clause fails.

Finally, Petitioner's second motion to expand the record (Doc. 60), filed *after* the PFRD was issued, is not well-taken and is therefore denied.

Accordingly, the Court **DENIES** Petitioner's Amended Petition (Doc. 15).

**IT IS THEREFORE ORDERED** as follows:

1.        Petitioner's Objections to the PFRD (Doc. 61) are **OVERRULED**;

2.        Petitioner's Second/Amended Motion to Expand the Record (Doc. 60) is **DENIED**;

3.  Judge Martínez's Proposed Findings and Recommended Disposition (Doc. 55) is **ADOPTED** as an Order of the Court;

4.  The Amended Motion under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence or Judgment by a Person in Federal Custody (Doc. 15) is **DENIED**; and

5.  The Court determines that Petitioner has failed to make a substantial showing that he has been denied a constitutional right. Therefore, the Court will deny a certificate of appealability.

_____/S/_____
KEA W. RIGGS
UNITED STATES DISTRICT JUDGE